[Cite as *In re Adoption of A.K.*, 2020-Ohio-3279.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE ADOPTION OF A.K., ET AL.     :

                                        :        Nos. 108521 and 108522

                                        :

[Appeal by J.G., Father]          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 11, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case Nos. 15ADP08542 and 15ADP08543

---

### *Appearances:*

Mary Catherine Barrett, *for appellant.*

Law Offices of James B. Palmquist, III, and Rebecca Clark;
Michelle K. McGuire, *for appellees.*

RAYMOND C. HEADEN, J.:

{¶ 1} Respondent-appellant J.G. ("Father") appeals from a probate court judgment granting the adoption petition of petitioners-appellees maternal grandparents ("Grandparents") of his children, A.K. and C.K. For the reasons that follow, we reverse the probate court's judgment.

## Procedural and Substantive History

{¶ 2} In April 2007, Father pleaded guilty to murder after killing his wife, the mother of A.K. and C.K. The Summit County Court of Common Pleas sentenced Father to a term of 23 years to life in prison.

{¶ 3} In October 2006, the Juvenile Division of the Summit County Court of Common Pleas issued an order prohibiting Father from having any contact with his daughters. In February 2007, the juvenile court granted legal custody of A.K. and C.K. to Grandparents and provided that Father "shall have no contact with the minor children absent an Order from this Court."

{¶ 4} On June 8, 2015, Grandparents filed a petition for adoption of A.K. and C.K. On June 22, 2015, Father filed objections to the petition. The proceedings were bifurcated and the first stage of the proceedings involved addressing whether Father's consent was required for adoption. R.C. 3107.07(A) provides that parental consent to adoption is not required when the court:

> finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

Therefore, pursuant to R.C. 3107.07(A), the first stage of the proceedings required the court to conduct an inquiry into whether Father had been in contact with, and provided support for the children within the year prior to the filing of petition.

{¶ 5} On February 9, and February 10, 2016, the Probate Division of the Cuyahoga County Court of Common Pleas held hearings on the question of consent. Father argued that the existence of the no-contact order was the only reason he had not been in contact with A.K. and C.K. Father further argued that he was unable to provide support for the girls due to his prison income, although he created a guardianship estate to support them. No child support order has ever been in effect in this case, and Grandparents have at no point requested support from Father.

{¶ 6} On March 24, 2016, the magistrate determined that Father's failure to communicate and provide support was justified, thereby concluding that his consent was required for adoption. On April 7, and May 27, 2016, Grandparents filed objections to the magistrate's decision. On December 8, 2016, the trial court sustained Grandparents' objections to the magistrate's decision and ordered that the adoption proceedings could continue without Father's consent.

{¶ 7} Father appealed, and in a split decision, this court affirmed the trial court's decision. *In re A.K.*, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165. Because *In re A.K.* found no justifiable cause for Father's failure to contact A.K. and C.K., the court declined to address the question of whether there was justifiable cause for his failure to support. *Id.* at ¶ 31.

{¶ 8} On remand, the case moved to the second phase of the adoption proceedings and held hearings to determine whether adoption was in the children's best interest. The magistrate concluded that adoption was in the children's best interest and granted Grandparents' adoption petition. Father filed objections to the

magistrate's decision. The trial court overruled his objections and entered a final judgment in favor of Grandparents. Father now appeals, presenting two assignments of error for our review.

**Law and Analysis**

{¶ 9} In Father's first assignment of error, he argues that the probate court erred in holding that Grandparents met their burden of establishing that they could adopt the children without Father's consent. In his second assignment of error, he argues that the probate court erred in holding that Grandparents met their burden of establishing that adoption was in the children's best interest.

{¶ 10} Adoption is a two-step process, with the first step concerning consent and the second step concerning the children's best interest. *In re Adoption of C.L.T.*, 8th Dist. Cuyahoga Nos. 98686 and 98687, 2012-Ohio-5706, ¶ 11. Adoption involves a termination of the natural parents' fundamental right to the care and custody of their children, "one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

{¶ 11} In recognition of this, parental consent is generally required before a probate court may grant an adoption petition. R.C. 3107.06. The narrow exception to this rule is laid out in R.C. 3107.07, which provides that parental consent is not required when the court finds that the petitioner has established by clear and convincing evidence that the parent has failed without justifiable cause to provide contact or support to the child in the year preceding the adoption petition. Because

adoption involves the complete and irrevocable severing of the parent's rights in their natural child, the burden is on the petitioner to establish this failure and a lack of justifiable cause. *In re Adoption of Masa* at 166. It follows that no burden is to be placed upon the nonconsenting parent to prove that his failure was justifiable. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶ 12} The question of whether a lack of justifiable cause has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. *In re Adoption of Masa* at 166, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 306, 408 N.E.2d 680 (1980).

{¶ 13} In the instant case, this court has already decided the consent question in *In re Adoption of A.K.* Generally, pursuant to the law of the case doctrine, our earlier decision on this question would remain the law of the case for all subsequent proceedings, including the instant appeal. *Lycan v. Cleveland*, 8th Dist. Cuyahoga Nos. 107700 and 107737, 2019-Ohio-3510, ¶ 28, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The Ohio Supreme Court has recognized an exception to this doctrine where an intervening decision from a superior appellate court was inconsistent with the law of the case determined by an intermediate appellate court. *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 19; *Jones v. Harmon*, 122 Ohio St. 420, 424, 172 N.E. 151 (1930). Where there exists such an extraordinary circumstance, the inferior court is bound to follow the superior court's holding. *Id.*

{¶ 14} Here, there has been an intervening case on the issue of whether a parent's consent was required for adoption that requires us to reexamine the question of consent in this case. In *In re Adoption of B.I.*, the Ohio Supreme Court held that "a parent's nonsupport of his or her minor child pursuant to a judicial decree does not extinguish the requirement of that parent's consent to the adoption of the child." *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 1.

{¶ 15} Although *B.I.* involved support rather than contact, we find no meaningful difference between these as they are envisioned in R.C. 3107.07. Moreover, while the specific facts of *B.I.* concerned an order reducing the father's child support obligation to zero, the court's holding more broadly stated that "a parent who relies on a valid order of a court of competent jurisdiction" cannot suffer because he or she relied on that order. *Id.* at ¶ 11. The court reasoned that concluding otherwise would essentially render the court order in question invalid, and further impose "some other amorphous obligation" on the parent with respect to support. *Id.* at ¶ 39. The same reasoning applies to an order involving a parent's contact with their child. Pursuant to the holding of *B.I.*, reliance on a court order constitutes justifiable cause.

{¶ 16} As an initial matter, R.C. 3107.07 must be strictly construed in favor of retention of parental rights. *B.I.* at ¶ 12. *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 23, citing *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). In applying R.C. 3107.07(A), courts

employ a two-step analysis. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. The first step involves deciding the factual question of whether the parent failed to provide support or have more than de minimis contact with the child, and the second step involves determining whether there was justifiable cause for such failure. *Id.*

{¶ 17} Here, although Father insists that he remains emotionally invested in his children's wellbeing, he acknowledges that he did not contact them. Therefore, the relevant question is whether there was a justifiable cause for Father's failure to provide more than de minimis contact. Like the parent in *B.I.*, Father's failure was the direct consequence of his reliance on a valid court order — the order that he not contact A.K. or C.K.

{¶ 18} The Ohio Supreme Court has declined to adopt any precise definition for "justifiable cause" as it relates to R.C. 3107.07. *In re Adoption of Holcomb*, 18 Ohio St.3d at 367, 481 N.E.2d 613. It has made clear in various cases, though, that one important consideration in determining justifiable cause is not only the parent's willingness to support or contact their child, but their ability to do so. *In re Adoption of Masa*, 23 Ohio St.3d at 166, 492 N.E.2d 140. *In re Adoption of McDermitt*, 63 Ohio St.2d at 306, 408 N.E.2d 680.

{¶ 19} In this case, there is evidence in the record that Father was willing to contact A.K. and C.K. in the form of his own statements, numerous letters he has written to the girls and given to his mother for safekeeping, and his participation in a program that allows him to send them gifts anonymously. There is also evidence

in the record that Father was legally prohibited from contacting A.K. and C.K. in the form of a valid no-contact order. Like the parent in *B.I.,* where Father's purported failure was premised on his compliance with a valid judicial decree, it cannot be said to have been without justifiable cause.

{¶ 20} Grandparents do not contest the validity of the no-contact order, or Father's compliance with that order. They instead argue that because the no-contact order was subject to modification by the juvenile court, and Father never sought to modify the order, its existence cannot constitute justifiable cause. We disagree. As the party seeking a benefit — the adoption of A.K. and C.K. — and, therefore, seeking to extinguish Father's parental rights, Grandparents have the burden to establish that there was no justifiable cause for Father's failure to contact his children. The Ohio Supreme Court has established that reliance on a valid court order constitutes justifiable cause. For this court to impose some additional requirement on a parent that they must attempt to modify the relevant court order would be an inappropriate shift of the petitioner's burden to the parent, in contravention of R.C. 3107.07. We decline to impose such a requirement here. Therefore, we conclude that there was justifiable cause for Father's failure to contact A.K. and C.K.

{¶ 21} Next, we turn to the question of whether there was justifiable cause for Father's failure to support A.K. and C.K. Although this issue was appealed in *In re A.K.,* this court decided the appeal solely on the issue of contact and did not reach a legal conclusion on the issue of support. *In re A.K.,* 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165, at ¶ 31.

{¶ 22} Similar to the contact question, there is no dispute that Father failed to support A.K. and C.K. in the year prior to Grandparents' filing the adoption petition. Therefore, the only issue to be determined is whether there was justifiable cause for this failure. We agree with the magistrate in this case and find that there was.

{¶ 23} When "'a child's needs are adequately provided for by a custodian who is in a better financial position than the natural parent, and the custodian expresses no interest in receiving any financial interest from the natural parent, the natural parent's failure to support the child may be deemed justifiable.'" *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 46, quoting *In re Adoption of S.A.H.*, 4th Dist. Ross No. 07CA2947, 2007-Ohio-3710, ¶ 21.

{¶ 24} Father was incarcerated for the entirety of the relevant time period. The record contains evidence that his prison income was approximately $240, and that he received approximately $1,330 from family and friends. The record also contains evidence that Father's expenses were approximately $1,600. It is not disputed that there was no court order in place imposing any financial support obligation on Father. There is evidence in the record that Grandparents did not request financial support or pursue a support order. Further, there is evidence in the record that at various points Grandparents actually turned down offers of support from paternal relatives. Following a thorough review of the record, we conclude that Father was willing but unable to provide support to his children, and

therefore there was justifiable cause for his failure to support. Therefore, Father's first assignment of error is sustained.

**{¶ 25}** In light of our conclusion that Father's consent is required for adoption, we need not address the probate court's best interest determination.

**{¶ 26}** Judgment reversed and case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
EILEEN T. GALLAGHER, A.J., DISSENTS WITH SEPARATE OPINION

EILEEN T. GALLAGHER, A.J., DISSENTING:

**{¶ 27}** I respectfully dissent from the majority opinion because I believe *In re Adoption of B.I.* is distinguishable from the instant case. *In re Adoption of B.I.* involved a natural parent's duty to financially support the child and this court's prior decision was based on Father's failure to have contact with his children. Although R.C. 3107.07(A) provides that either lack of support or lack of contact can override

a parent's consent to adoption, the no-contact order issued in 2006 prohibiting Father from contacting his children was modifiable. Father could have moved the court anytime between 2006 and 2015, to modify the order to allow him to contact his children, but Father made no effort to ever modify the no-contact order. If he had sought a modification of the no-contact order and the request had been denied, then his failure to contact the children could not be held against him. But that is not the case. He never sought a modification of the no-contact order and, therefore, made no effort to contact his children. Therefore, I would find that Father's consent was not required for Grandparents to adopt the children.