**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-350

IN RE ADOPTION OF A.K. ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350.]**

*Adoption—Parent's right to consent to the adoption of his children not extinguished under R.C. 3107.07(A)—Judgment affirmed.*

(No. 2020-1163—Submitted June 15, 2021—Decided February 10, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 108521 and 108522, 2020-Ohio-3279.

_____

**STEWART, J., announcing the judgment of the court.**

**{¶ 1}** This case is a discretionary appeal involving R.C. 3107.07, the statute that provides exceptions to requiring parental consent for the adoption of minors. We are asked to decide whether under this court's holding in *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, a parent's consent to the adoption of his children is required when that parent has not had more than de minimis contact with his children for at least one year prior to the filing of an

adoption petition and the parent was under a court order to have no contact with his children. This opinion concludes that it is and that a parent's right to consent to the adoption of his or her child is not extinguished under R.C. 3107.07(A) for lack of sufficient contact with the child when the parent has acted in compliance with a no-contact order prohibiting communication or contact with his or her minor child. We affirm the judgment of the Eighth District Court of Appeals.

**Facts and Procedural History**

{¶ 2} In April 2007, appellee, the natural father of A.K. and C.K., was convicted of murdering the minors' natural mother and was sentenced to a prison term of 23 years to life. A.K. and C.K. were placed with appellants, their maternal grandparents, and have been in their legal custody since February 2007. When the Juvenile Division of the Summit County Court of Common Pleas awarded custody of the children to the grandparents, the order specifically stated: "Father shall have no contact with the minor children absent an Order from this Court."

{¶ 3} In 2015, the grandparents filed petitions to adopt the children in the Probate Division of the Cuyahoga Court of Common Pleas. The father filed objections, and the adoption proceedings were bifurcated to first address whether the need to obtain the father's consent was extinguished under R.C. 3107.07(A). If the court determined that consent was not necessary, it would then decide whether adoption was in the best interest of the children in a subsequent hearing.

{¶ 4} R.C. 3107.07(A) provides that the consent of a natural parent to the adoption of his or her child is not required under certain circumstances. Relevant to this case, consent is not required if the court finds by clear and convincing evidence that the parent has failed, with no justifiable cause, to have more than de minimis contact with the child for at least one year immediately preceding the filing of the adoption petition or the minor's placement in the home of the petitioner. R.C. 3107.07(A). The magistrate who presided over the consent hearing determined that the grandparents did not establish by clear and convincing evidence that the father's

failure to communicate with the children during the one-year period prior to the petitions for adoption being filed was not justified, finding that the no-contact order from the juvenile court facially established evidence of a justifiable excuse.

{¶ 5} The grandparents filed objections to the decision, which the probate court sustained. The court determined that the father's consent was not required, because it was his conduct that led to the no-contact order and therefore the order could not provide justifiable cause for his lack of contact with the children for the year prior to the filing of the petitions.

{¶ 6} The father appealed to the Eighth District Court of Appeals, and in a split decision, the court affirmed the probate court's decision. *In re A.K.*, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165 ("*A.K. I*"). In *A.K. I*, the court of appeals agreed with the probate court's conclusion that it would be unjust to allow the father to use his imprisonment to justify his failure to contact his children when it was his actions that necessitated his prison sentence. The Eighth District remanded the case to the probate court to determine whether adoption was in the best interest of the children. The magistrate found that the adoption of A.K. and C.K was in their best interest and granted the grandparents' petitions. The father filed objections to the magistrate's decision, but the court adopted the decision granting the petitions for adoption.

{¶ 7} The father appealed the probate court's judgment, asserting that (1) the probate court erred in holding that the grandparents met their burden of establishing that they could adopt the children without the father's consent and (2) the probate court erred in holding that the grandparents met their burden of establishing that adoption was in the children's best interest. The Eighth District reversed the judgment of the trial court based on this court's intervening decision in *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28. *In re Adoption of A.K.*, 2020-Ohio-3279, 155 N.E.3d 239 ("*A.K. II*").

**{¶ 8}** The Eighth District noted that the issue whether the father's consent to the adoptions was necessary had been decided in *A.K. I* and that pursuant to the law-of-the-case doctrine, the issue would generally not be revisited. *A.K. II* at ¶ 13. However, the court of appeals held that our decision in *B.I.* was intervening and controlling authority regarding the parental-consent analysis under R.C. 3107.07(A) and that it was therefore required to reexamine the issue. *A.K. II* at ¶ 13, citing *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329 (when an intervening decision from a superior appellate court is inconsistent with the law of the case determined by an intermediate appellate court, the inferior court is bound to follow the superior court's holding). In a split decision, the Eighth District held that under *B.I.*, the father's reliance on the no-contact order constituted justifiable cause for his having had no contact with his children.

**{¶ 9}** The grandparents filed an application for reconsideration and a motion to certify a conflict. The Eighth District denied both. The grandparents subsequently filed this discretionary appeal, which we accepted on a single proposition of law:

> Whether the holding in *In re* [*Adoption of*] *B.I.* applies broadly such that the mere existence of any judicial order precluding a natural parent from communication with his minor children is sufficient justifiable cause to [not] provide more than * * * de minimis contact with the minor for a period of at least one year under R.C. 3107.07(A).

*See* 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 273.

## Law and Analysis

**{¶ 10}** As an initial matter, the grandparents argue, and the dissenting opinions agree, that the Eighth District Court of Appeals should not have revisited

4

the issue of consent. They assert that because the issue of justifiable cause was decided in *A.K. I*, 2017-Ohio-9165, the court of appeals was barred from further consideration of that issue based on the law-of-the-case doctrine. This is an incorrect understanding of the doctrine. Although it is true that a reviewing court's prior ruling on a legal question in a case will generally not be disturbed in subsequent proceedings in the same case, *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984), the law-of-the-case doctrine is not an automatic or an absolute bar to subsequent review of such a legal issue. The doctrine must give way in certain circumstances, one of which is when an intervening decision rendered by a superior court is at odds with a legal determination made in the pending matter. *Jones v. Harmon*, 122 Ohio St. 420, 424, 172 N.E. 151 (1930). As the opinion concurring in judgment only notes, the doctrine does not serve to limit the authority of a court and its application is discretionary. Opinion concurring in judgment only, ¶ 34. We therefore reject the position that the Eighth District was precluded from revisiting the issue of consent in this case; the court revisited the issue to determine whether our decision in *B.I.* was intervening authority that required a change to the appellate court's prior judgment.

{¶ 11} Turning now to the issue raised in the proposition of law—whether the father's consent to adoption is necessary under the circumstances of this case— as is often noted in cases dealing with severing a parent-child relationship, the "[p]ermanent termination of parental rights has been described as 'the family law equivalent of the death penalty * * *.' " *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Because adoption terminates the fundamental rights of natural parents, written consent is generally required of parents before an adoption may proceed, R.C. 3107.06. Exceptions to this rule are set forth in R.C. 3107.07. Relevant to this case, R.C. 3107.07(A) provides that consent is not required from

[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶ 12}** "The cornerstone of the adoption statutes is the promotion of children's welfare, specifically those children who lack and are in need of the security and benefits of a loving home and family." *In re Adoption of Kohorst*, 75 Ohio App.3d 813, 817, 600 N.E.2d 843 (3d Dist.1992). R.C. 3107.07(A) operates only to determine whether an adoption may proceed without a parent's consent. *In re Adoption of Jorgensen*, 33 Ohio App.3d 207, 209, 515 N.E.2d 622 (3d Dist.1986). Its operation does not result directly in the adoption to which it relates. *Id.* "[R.C. 3107.07(A)] only permits a court to proceed with the adoption and then only when [the court] finds after hearing that the adoption is in the best interest of the child, [may it] enter[] a final decree of adoption." *Id.*

**{¶ 13}** In *B.I.*, we accepted a discretionary appeal, determined that a conflict existed between judgments of the First District Court of Appeals and the Fifth District Court of Appeals, and ordered the parties to brief the following question:

" 'In an adoption-consent case under R.C. 3107.07(A) in which a court has previously relieved a parent of any child-support obligation, does that previous order supersede any other duty of maintenance and support so as to provide 'justifiable cause' for the

parent's failure to provide maintenance and support, therefore requiring the petitioner to obtain the consent of that parent?' "

*See* 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 8-9, quoting 152 Ohio St.3d 1441, 2018-Ohio-1600, 96 N.E.3d 297, quoting the court of appeals' entry. In a split decision, a majority of this court concluded that "a parent's nonsupport of his or her minor child pursuant to a zero-support order of a court of competent jurisdiction does not extinguish the requirement of that parent's consent." *Id.* at ¶ 43.

{¶ 14} In reaching that conclusion, this court did not directly address the question we had ordered the parties to brief. The *B.I.* majority, instead, used a three-part test that asks (1) what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner, (2) whether during that year the parent complied with his or her obligation under the law or judicial decree, and (3) if during that year the parent did not comply with his or her obligation under the law or judicial decree, whether there was justifiable cause for that failure. *Id*. at ¶ 15. In other words, instead of deciding whether a parent who failed to support his child for the year prior to the filing of an adoption petition had justifiable cause for doing so when a previously imposed court-ordered child-support obligation had been terminated, the majority resolved the matter after answering the first question of the three-part test. The court stated, "We stand in this case at the first step— determining what the law or judicial decree required of the parent for the year prior to the filing of the petition. If the father had no obligation to provide child support, the analysis ends there." *Id*. at ¶ 16.

{¶ 15} Applying the *B.I.* three-part test to the case before us, this opinion likewise resolves the matter at the first step by determining what the law or judicial decree required of the father during the year immediately preceding the filing of the

adoption petitions. The opinion concurring in judgment only and the dissenting opinions disagree with this opinion's determination that *B.I.* applies to this case. The opinion concurring in judgment only and the second dissenting opinion would limit the application of *B.I.* to cases involving child support: specifically, child support that is addressed in a judicial decree. Although the exception under R.C. 3107.07 to the consent requirement in the case before us deals with an allegation that the parent failed to have contact with his children as opposed to an allegation that the parent failed to provide maintenance and support, which was the situation in *B.I.*, there is no logical reason why the analysis should be any different when applying the three-part test, despite the insistence of the second dissenting opinion that "the plain, unambiguous language of the statute" requires a different analysis. Second dissenting opinion, ¶ 72.

{¶ 16} The opinion concurring in judgment only also makes much ado about the fact that under R.C. 3107.07, a parent's obligation to provide for the maintenance and support of his or her child is established by "law or judicial decree" whereas the statute does not use the same phrase to measure a parent's contact obligations. Instead, the statute uses the phrase "more than de minimis" to assess a parent's contact obligations. But this court has historically treated the two statutory elements the same way when considering whether the consent of a parent is required: we have determined whether the parent failed to meet the contact or support obligations, and if so, whether there was justifiable cause for that failure. *See, e.g.*, *In re Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986); *In re Adoption of Bovett*, 33 Ohio St.3d 102, 105, 515 N.E.2d 919 (1987). It was this court's decision in *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, that created a new first step. Instead of a court's simply determining whether the parent had provided maintenance and support pursuant to law or judicial decree and if the parent had not, whether the trial court could find by clear and convincing evidence that there was justifiable cause for not doing so, under *B.I.*, the court first

determines what the law or judicial decree required of the parent for the year prior to the filing of the petition. The decision in *B.I.* created an automatic exemption from the trial court's justifiable-cause analysis when a parent can point to a court order that required no maintenance and support as the basis for determining the amount of maintenance and support the parent was required to provide to his or her child, regardless of any other circumstances that might pertain to the parent's ability to support the child or whether there is any other obligation under the law to do so.

{¶ 17} The disjunctive relationship of the contact and support provisions in R.C. 3107.07(A) (failure to provide more than de minimis contact *or* failure to provide maintenance and support) shows that the General Assembly intended to make the provisions of equal importance because each provision is subject to the same evidentiary standard and a parent's failure to meet either provision is sufficient to nullify the need to obtain that parent's consent. *In re Adoption of A.H.*, 9th Dist. No. 12CA010312, 2013-Ohio-1600, ¶ 9, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304, 408 N.E.2d 680 (1980). Thus, the automatic exemption from the justifiable-cause inquiry that this court created in *B.I.* when a court order relieves a parent from a previously imposed child-support obligation should also apply when a court specifically orders a parent to have no contact with his child.

{¶ 18} It is clear that the judicial decree in the instant case (the no-contact order) mandated that the father do just what was ordered—have no contact or communication with his children. What was legally required of the father here is more intelligible than what the majority in *B.I.* found had been legally required of the father in that case. The majority in *B.I.* interpreted a judicial decree terminating a previously imposed court-ordered child-support obligation to actually require—no, mandate—that the father not support his child, *id*. at ¶ 16, an interpretation that was criticized as defying logic, *id*. at ¶ 63 (Stewart, J., dissenting). In any event, regardless of whether a parent's alleged failure to provide support for his or her

child or to have contact with his or her child is being evaluated under the first prong of the three-part test, the underlying policy implications are the same: a probate court should not dispense with the requirement of a parent's consent when the parent abided by a court order prohibiting the parent from doing the very act that the statute requires in order for the parent to maintain his or her right to consent to the adoption of his or her minor child.

{¶ 19} Similar to the assertion in the opinion concurring in judgment only discussed above, the second dissenting opinion states that because "[t]here is no judicial-decree language in the de minimis contact provision," "whatever contact a judicial decree orders between a parent and his or her child is not relevant to the probate court's inquiry regarding whether the parent had more than de minimis contact with the child." Second dissenting opinion at ¶ 71. To conclude that a no-contact order that prohibits all contact between a parent and his or her child is not determinative, let alone that it is irrelevant, regarding the amount of contact required under R.C. 3107.07(A) would essentially mean that a "zero-support order," under which, according to *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, a parent does not need to provide any support in order to maintain his or her right to consent, demands more compliance than a no-contact order that expressly prohibits a parent from having contact with his or her child. That conclusion would also ignore our prior case law indicating that we must strictly construe R.C. 3107.07(A) in favor of the nonconsenting parent. *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 132, 585 N.E.2d 418 (1992).

{¶ 20} In *B.I.*, this court explained that " '[t]he interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter.' " *Id.* at ¶ 41, quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1997). Moreover, we asked, "Can a parent who relies on a valid order of a court of competent jurisdiction suffer—because he or she relied on that order—

the ' "family law equivalent of the death penalty * * *?" ' " *Id.* at ¶ 11, quoting *Hayes*, 79 Ohio St.3d at 48, 679 N.E.2d 680, quoting *Smith*, 77 Ohio App.3d at 16, 601 N.E.2d 45. When applying R.C. 3107.07(A), we must strictly construe its language in favor of the retention of parental rights. *B.I.* at ¶ 12; *see also In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 31 (explaining that courts must strictly construe any exception to the parental-consent requirement in favor of the nonconsenting parent).

**{¶ 21}** Accordingly, this opinion concludes (1) that a parent's right to consent to the adoption of his or her child is not extinguished under R.C. 3107.07(A) when the parent did not have more than de minimis contact with the minor child during the statutory period because the parent was acting in compliance with a no-contact order prohibiting all communication and contact with the child and (2) that therefore, in order for the adoption proceedings in this case to go forward, the father's consent is required.

**{¶ 22}** We affirm the judgment of the Eighth District Court of Appeals and remand this case to the trial court for further proceedings.

Judgment affirmed<br>and cause remanded to the trial court.

BRUNNER, J., concurs.

DEWINE, J., concurs in judgment only, with an opinion joined by FISCHER, J.

O'CONNOR, C.J., dissents, with an opinion.

KENNEDY, J., dissents, with an opinion joined by DONNELLY, J.

_____

**DEWINE, J., concurring in judgment only.**

**{¶ 23}** The statute at the center of this case directs courts to make two distinct inquiries. To find that a parent's consent to the adoption of his or her child is not required, a court must first find that the parent has failed either "to provide

more than de minimis contact with the minor" or "to provide for the maintenance and support of the minor as required by law or judicial decree." R.C. 3107.07(A). Second, the court must find that there was no justifiable cause for the failure. *Id.*

{¶ 24} The lead opinion, however, collapses the two questions and improperly concludes that a no-contact order conclusively establishes justifiable cause for a parent's failure to maintain contact with his or her child. In doing so, it disregards the plain language of the statute and our caselaw interpreting it. Whether a no-contact order amounts to justifiable cause for a parent's failure to contact his or her child necessarily depends on case-specific considerations, such as the specific terms of the order and the extent to which the parent's lack of contact was due to the existence of the order.

{¶ 25} But while the lead opinion gets the legal analysis wrong, I ultimately agree that under the facts of this case, the parent's consent to the adoption is required. The adoption petitioners failed to establish by clear and convincing evidence that the parent's lack of contact with his children was without justifiable cause. I therefore concur in the judgment remanding the case to the trial court for further proceedings.

**The statute**

{¶ 26} Under R.C. 3107.07(A), consent to adoption is not required of

> [a] parent of a minor, when it is alleged in the adoption
> petition and the court * * * finds by clear and convincing evidence
> that the parent has failed without justifiable cause to provide more
> than de minimis contact with the minor or to provide for the
> maintenance and support of the minor as required by law or judicial
> decree for a period of at least one year immediately preceding either
> the filing of the adoption petition or the placement of the minor in
> the home of the petitioner.

Thus, a court must undertake a two-step analysis in considering whether a parent loses his or her right to consent to an adoption under the statute. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. The court must first determine whether the parent has failed either "to provide more than de minimis contact with the minor" or "to provide for the maintenance and support of the minor as required by law or judicial decree." R.C. 3107.07(A); *see also M.B.* at ¶ 23; *In re Adoption of Bovett*, 33 Ohio St.3d 102, 105, 515 N.E.2d 919 (1987). If he or she has failed in either respect, the court must then consider whether that failure was "without justifiable cause." *Id.* The burden of proving both that the parent failed to contact or support the child and that the failure was without justification is on the person seeking to adopt the child. *Bovett* at paragraph one of the syllabus, following *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph one of the syllabus.

### The adoption proceedings

{¶ 27} In this case, minors A.K. and C.K. were placed in the legal custody of their maternal grandparents following their father's incarceration for murdering their mother. The juvenile court's order awarding legal custody to the grandparents provided: "Father shall have no contact with the minor children absent an Order from this Court."

{¶ 28} The maternal grandparents later sought to adopt the girls. It is undisputed that the girls' father did not have any contact with them in the year leading up to the filing of the adoption petitions. The grandparents asserted that his lack of contact was not justifiable and, consequently, his consent to the adoption was not legally required. Father countered that the no-contact order had prevented him from contacting his children and thus the lack of contact was justified.

{¶ 29} After a hearing, the magistrate found that father was "willing[] but unable to contact his children due to the no contact order." Noting that father had

written numerous letters to his daughters and given them to his mother for safekeeping, the magistrate found that father genuinely desired to communicate with his children. The magistrate further explained that the no-contact order was "direct and unqualified" and that "[d]espite the terrible circumstances that gave rise to the no contact order," he would "not find fault in an individual for following a Court order completely and to the letter." The magistrate determined that any attempt by father to modify the terms of the no-contact order would have been met with vigorous opposition by the maternal grandparents. He also credited father's concerns that if father attempted to modify the order, the maternal grandparents would not allow his family to visit the girls. As a result, the magistrate determined that the grandparents had failed to establish by clear and convincing evidence that father's failure to contact his children was unjustified and that, therefore, his consent to the adoption was required.

{¶ 30} The probate court sustained the grandparents' objections to the magistrate's decision and ordered that the adoption could proceed without father's consent. The probate court acknowledged that throughout the relevant time period, the juvenile court's order barred all contact between the children and their father. But the probate court disagreed with the magistrate's take on father's failure to seek modification of the no-contact order, explaining that it was "not satisfied with the apparent lack of initiative on [father's] part to make any attempt to restore communication with his children, especially where his testimony indicated that he strongly wished to have contact with them."

{¶ 31} The most significant factor for the probate court, however, was the circumstances that led to father's predicament in the first place: "Justice requires that this Court should not ignore the reason [father] was put into his current position." And because "[h]e should not now be allowed to reap any legal benefit from the consequences of his crime," the probate court determined father's consent to the adoption was not required.

{¶ 32} Father appealed to the Eighth District Court of Appeals. *In re A.K.*, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165. Picking up on the probate court's reasoning, the Eighth District opined that father should not be able to obtain a legal benefit from murdering the children's mother. *Id*. at ¶ 27. The appellate court therefore held that father's failure to have contact with his children was not justified and his consent to the adoption was not required. It remanded the case to the probate court to determine whether adoption was in the best interests of the minors. The probate court concluded that adoption was in the minors' best interests, and father again appealed.

{¶ 33} In the second appeal, father asked the Eighth District to reconsider its decision that his consent was not required, in light of this court's intervening decision in *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28. The Eighth District concluded that *B.I.* compelled a different result on the consent issue. *In re Adoption of A.K.* ("*A.K. II*"), 2020-Ohio-3279, 155 N.E.3d 239. While the Eighth District noted that *B.I.* involved a different type of court order—one eliminating the parent's child-support obligation—the court of appeals relied on our broader discussion in *B.I.* that " 'a parent who relies on a valid order of a court of competent jurisdiction' cannot suffer because he or she relied on that order." *A.K. II* at ¶ 15, quoting *B.I.* at ¶ 11. Pointing to our statement in *B.I.* that a contrary result "would essentially render the court order in question invalid," *A.K. II* at ¶ 15, citing *B.I.* at ¶ 39, the Eighth District opined that the "same reasoning applies to an order involving a parent's contact with their child," *id*. Thus, it concluded, "Pursuant to the holding of *B.I.*, reliance on a court order constitutes justifiable cause." *A.K. II* at ¶ 15. The Eighth District therefore held that father's consent to the adoption was required.

{¶ 34} There are certainly parallels between the issues presented in this case and those in *B.I.*, and I agree that the Eighth District was warranted in revisiting the consent issue based on the *B.I.* court's broader discussion of the effect of court

orders on a parent's consent to adoption. The law-of-the-case doctrine "is a matter of practice and discretion, not a limit on power." Wright & Miller, *Federal Practice and Procedure*, Section 4478 (2d Ed.2021). Thus, an intervening decision " 'need not discuss the precise issue' " previously addressed by an appellate court for the decision to cast doubt on that court's prior ruling. *United States v. Plugh*, 648 F.3d 118, 124 (2d Cir.2011), quoting *In re Zarnel*, 619 F.3d 156, 168 (2d Cir.2010); *see also United States v. Holloway*, 630 F.3d 252, 258 (1st Cir.2011) (controlling authority "need not be directly on point to undermine" a prior decision of an appellate court for purposes of the law-of-the-case doctrine).

{¶ 35} Although the law-of-the-case doctrine did not preclude the Eighth District from taking a second look at the consent issue, *B.I.* does not control the result in this case. In holding that *B.I.* "established that reliance on a valid court order constitutes justifiable cause," *A.K. II* at ¶ 20, the Eighth District overlooked important aspects of that decision, and the lead opinion makes that same error now.

### *B.I.* involved a different question

{¶ 36} This court's decision in *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, involved the first inquiry under R.C. 3107.07(A): whether the parent failed to have more than de minimis contact with the child or to provide for the maintenance and support of the child as required by law or judicial decree. In *B.I.*, a child's stepfather sought to adopt the child without the consent of the child's biological father. The stepfather alleged that the father had failed to financially support the child in the manner required by law or judicial decree and that as a result, the adoption could go forward without the father's consent. *Id*. at ¶ 2-3. The father objected on the grounds that he had been subject to a court order eliminating his child-support obligations and therefore had not failed to provide the financial support required by judicial decree. *See id.* at ¶ 4.

{¶ 37} This court agreed with the father. We held that "a parent's nonsupport of his or her minor child pursuant to a judicial decree does not

16

extinguish the requirement of that parent's consent to the adoption of the child." *Id*. at ¶ 1. We outlined the three statutory considerations necessary to decide whether the parent's consent to adoption was required when it was alleged that the parent had failed to provide child support in the amount required by law or judicial decree. *Id*. at ¶ 15. To determine whether a parent has failed to provide child support "as required by law or judicial decree," R.C. 3107.07(A), the court must first ascertain "what the law or judicial decree required of the parent," *B.I.* at ¶ 16. We explained, "If the father had no obligation to provide child support, the analysis ends there." *Id*. If there is an obligation to pay support, the court then must determine whether the parent complied with that requirement. *Id.* at ¶ 15. And finally, if the parent failed to pay support as required by law or judicial decree, the court must determine whether that failure was justified. *Id.*

**{¶ 38}** The result in *B.I.* was compelled by the plain language of the statute. For the court to conclude that the father's consent to adoption was not required, the stepfather needed to establish that the father had failed "to provide for the maintenance and support of the minor *as required by law or judicial decree*." (Emphasis added.) R.C. 3107.07(A). We held that because the juvenile court had issued an order reducing the father's support obligation to zero, the father had not failed to provide the support required by judicial decree. *B.I.* at ¶ 29; *see also In re Adoption of A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82, ¶ 10 ("Whether father has provided the necessary support under the statute is measured by the terms of the judicial decree").

**{¶ 39}** The court in *B.I.* never reached the question whether the parent's failure to provide support or contact was justifiable. Indeed, we explained that the statute distinguishes the justifiable-cause inquiry from the question of what was required by the judicial decree, saying:

> [T]he issue is not whether a decree ordering zero support—or one
> that terminates a previously ordered support obligation or modifies
> a previously ordered support amount to zero—justifies a failure to
> provide maintenance and support; instead, the issue is whether the
> existence of a no-support order means that the parent subject to it
> was under no obligation to provide maintenance and support.

(Footnote omitted.) *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 16.

{¶ 40} The lead opinion relies on the three-part test outlined in *B.I.*, saying that it, too, decides this case "at the first step by determining what the law or judicial decree required," lead opinion at ¶ 15. But that analysis has no application here. The three steps outlined in *B.I.* pertained only to a challenge to a parent's right to consent to adoption on the grounds that the parent had failed in his or her *child-support* obligations. That is because the language "as required by law or judicial decree" in the statute applies only to the determination of the amount of child support owed. R.C. 3107.07(A); *B.I.* at ¶ 14-16. The amount of contact a parent must have with his or her children to preserve the right to consent to adoption is not set by law or judicial decree; it is instead dictated by R.C. 3107.07(A) itself, which requires that the contact be "more than de minimis." Thus, to resolve a challenge involving a parent's lack of contact with his or her children, the statute directs us to consider only two things: whether the parent failed to have more than de minimus contact with them and whether that failure was justified.

{¶ 41} It is undisputed that A.K. and C.K.'s father had no contact with them during the year preceding the filing of the adoption petitions. There is therefore no question that the first requirement necessary to extinguish the need to obtain father's consent to adoption has been met: father failed "to provide more than de minimis contact" with his children. *See* R.C. 3107.07(A). The question we must

18

answer here exists at the second step; we must decide whether that failure was "without justifiable cause." *See id*.

{¶ 42} It is true that, like the father in *B.I.*, A.K. and C.K.'s father asserts that he relied on a valid court order—here, a court order prohibiting him from contacting his children. But the lead opinion is wrong to conclude that there should be no difference in how courts approach the support and contact inquiries because, in its estimation, "the underlying policy implications are the same," lead opinion at ¶ 18. By thumbing its nose at the statute and relying almost exclusively on policy considerations, the lead opinion writes off the critical distinction between the legal question presented in *B.I.* and the one at issue here. In *B.I.*, the father's legal child-support obligation was set by the terms of the court order; in other words, the child-support order directly informed the issue whether the father had failed to provide his child with the financial support "required by * * * judicial decree," as mandated by R.C. 3107.07(A). The same is not true in this case. The no-contact order has no bearing on the first part of the test, whether A.K. and C.K.'s father failed to have "more than de minimus contact" with them; it is relevant only to the second question, whether their father's lack of contact was justified.

{¶ 43} Given that the lead opinion acknowledges this variation in the statutory language, its contention that "there is no logical reason why the analysis should be any different," lead opinion at ¶ 15, is puzzling. The *B.I.* court's analysis of the child-support order dealt not with justifiable cause but with the threshold question under the statute: the amount of child support that was required by the judicial decree. In contrast to the child-support order in *B.I.*, a no-contact order has no effect on the threshold legal requirement that a parent have more than de minimis contact with his or her children.

{¶ 44} The lead opinion scoffs at this distinction, assuring us that the difference in the way the statute treats the support and contact inquiries doesn't matter, because it won't change the result in this case. But our goal isn't just to end

up in the right place, it is also to correctly set forth the law for the benefit of future litigants.  And if we are sloppy in our analysis in this case, there may well be untoward results in other cases.

{¶ 45} Consider, for instance, an order forbidding a parent from having contact with his or her child until the parent satisfies a specified set of conditions—say, completion of a drug-treatment program or anger-management classes.  Or a no-contact order that explicitly states that the court will consider requests for modification after a period of one year.  Surely, if a parent's lack of contact with his or her child is a result of the parent's failure to take the steps necessary to have contact, a trial court may consider those facts in evaluating whether the lack of contact was justified—notwithstanding the fact that the parent is still complying with a valid no-contact order.

{¶ 46} Or take a situation in which a no-contact order is in place, but the petitioner presents evidence indicating that the parent has sworn off any desire to have contact with the child.  Should the parent be able to object to the adoption simply because he or she is subject to a no-contact order, when the evidence suggests that the order is not the reason for the lack of contact?

{¶ 47} These are just examples.  But they illustrate the real problem with the lead opinion's proposed holding.  The lead opinion, in effect, would turn a no-contact order into a conclusive presumption that a natural parent was justified in not having contact with a child.  In doing so, it would deprive a potential adoptive parent of any opportunity to show that the natural parent's lack of conduct was unjustified notwithstanding the existence of the order.  Although establishing a lack of justifiable cause "ordinarily will not be an easy showing to make," *A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82, ¶ 17, it is one that the statute entitles an adoption petitioner a fair chance to make.

{¶ 48} To be sure, a person seeking to adopt will often be unable to meet his or her burden of establishing a lack of justifiable cause when faced with

evidence that a parent's failure to contact his or her child was due to compliance with a valid no-contact order. I am not suggesting that the trial court should examine the underlying reasons that the no-contact order was issued in the first place. But in determining whether a parent's lack of contact was justified, a trial court must be permitted to consider evidence relevant to that lack of contact. The lead opinion's proposed holding that, as a matter of law, "a parent's right to consent to the adoption of his or her child is not extinguished under R.C. 3107.07(A) for lack of sufficient contact with the child when the parent has acted in compliance with a no-contact order prohibiting communication or contact with his or her minor child," lead opinion at ¶ 1, would remove from consideration the scope and terms of the no-contact order at issue or whether the order affected the parent's contact with his or her children in a given case. Rather than hold that the existence of a no-contact order irrefutably establishes justifiable cause, I would permit courts to consider the scope of the order and to determine based on the evidence presented whether the parent's lack of contact with his or her child was truly a result of the order.

**The adoption petitioners did not establish a lack of justifiable cause**

{¶ 49} Although I disagree with the lead opinion's reasoning, I ultimately concur in the judgment it announces. On the facts of this case, the grandparents have not met their burden of establishing that despite the existence of the no-contact order, father lacked justification for failing to have contact with his children.

{¶ 50} The record in this case more than established that father's lack of contact with his daughters was due to his compliance with the juvenile court's no-contact order. And the probate court improperly relied on father's crime as the central basis for finding that his lack of contact was unjustifiable. Moreover, while the order stated that father was prohibited from contacting his children "absent an Order from [the juvenile] Court," such general language does little to establish that

under the circumstances here, father would have had any meaningful opportunity to obtain modification of the order.

{¶ 51} In short, father presented substantial evidence establishing that he was actively abiding by the terms of the no-contact order, and the grandparents did not meet their burden of overcoming that showing and establishing by clear and convincing evidence that father's lack of contact with the children was nevertheless unjustified. I therefore agree that father's consent to adoption is required and join in the judgment remanding the case to the trial court for further proceedings.

FISCHER, J., concurs in the foregoing opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 52} Because I do not believe that this court's decision in *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, is an intervening decision, I would conclude that the court of appeals erred when it reconsidered its decision that the father's consent to the adoption of the children was not required, and I would accordingly reverse the judgment of the court of appeals and remand this matter to that court for it to review the probate court's determination that the adoption was in the best interest of the children.

_____

**KENNEDY, J., dissenting.**

{¶ 53} The common thread between this case and *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, is that both cases concern subdivision (A) of the consent-to-adoption statute—R.C. 3107.07. But that is all that these two cases have in common.

{¶ 54} This case is about what constitutes "justifiable cause" when a natural parent has failed to have more than de minimis contact with his children in the year preceding the filing of a petition for adoption. *B.I.* was not about the de minimis

contact provision of R.C. 3107.07(A), and this court never reached the question of what constituted "justifiable cause" in that case.

{¶ 55} The law-of-the-case doctrine provides that a court decision resolving a question of law should control the same legal issue in subsequent proceedings in the same case. *Pepper v. United States*, 562 U.S. 476, 506, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011), citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). One exception to the law-of-the-case doctrine is when an intervening decision changes the controlling law. *See Nolan v. Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984); *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 3. An appellate court is required to apply an "intervening decision by a superior court that [is] inconsistent with the law of the case." *Id*. at ¶ 19. Because *B.I.* has different facts, involves a different provision of the consent-to-adoption statute, and does not address "justifiable cause," *B.I.* is not an intervening decision and the law-of-the-case doctrine applies to this case. Therefore, I dissent and would reverse the judgment of the court of appeals and remand this matter to that court to review the probate court's determination that the adoption was in the best interest of the children.

**Appellate court's determination that father's de minimis contact with his children was without justifiable cause is the law of the case**

{¶ 56} The law-of-the-case doctrine provides that " 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Pepper* at 506, quoting *Arizona* at 618. The doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not limit their power. *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). The law-of-the-case doctrine applies to "legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan* at 3. The rule is necessary "to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve

the structure of superior and inferior courts as designed by the Ohio Constitution." *Id*. "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at syllabus. An intervening decision is one that has "created a change in the law that [is] inconsistent with the legal conclusion reached by the appellate court." *Hopkins* at ¶ 2-3. A lower court is required to apply an intervening decision by this court that is inconsistent with the law of the case. *Id*. at ¶ 19.

**{¶ 57}** "Under the law-of-the-case doctrine, the denial of jurisdiction over a discretionary appeal by this court settles the issue of law appealed." *Sheaffer v. Westfield Ins. Co.*, 110 Ohio St.3d 265, 2006-Ohio-4476, 853 N.E.2d 275, syllabus. After the appellate court affirmed the trial court's determination that the father in this case had failed to have contact with his daughters without justifiable cause, *In re A.K.*, 8th Dist. Cuyahoga No. 105426, 2017-Ohio-9165, the father filed a discretionary appeal in this court. He raised the following proposition of law:

> When a natural parent refrains from contacting his children in compliance with a court order, he has "justifiable cause" for the lack of contact, regardless of the circumstances leading to the order, and he may therefore withhold his consent to a third party's adoption petition under R.C. 3107.07(A).

This court declined jurisdiction. *In re A.K.*, 152 Ohio St.3d 1468, 2018-Ohio-1795, 97 N.E.3d 502. Therefore, under *Shaeffer*, our denial of jurisdiction settled the issue of law appealed and the appellate court's holding—that the father lacked justifiable cause in failing to have more than de minimis contact with his children—became the law of the case.

**{¶ 58}** The father argues that the court of appeals was correct in holding that the intervening-decision exception to the law-of-the-case doctrine applies here. He asserts, and the court of appeals determined, that this court's decision in *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, is an intervening decision. It is not. This case addresses only whether the father had "justifiable cause" for his lack of contact with his children in the year immediately preceding the filing of the petitions for adoption. The facts in this case and the legal question raised here are different from the facts and the legal question raised in *B.I.*

**{¶ 59}** *B.I.* was a discretionary appeal and certified-conflict case from the First District Court of Appeals. While the certified question and the second proposition of law we accepted posed a "justifiable cause" question, *see id.* at ¶ 8-9, we never reached that question. In fact, we explicitly stated: "[T]he issue is not whether a decree ordering zero support * * * justifies a failure to provide maintenance and support; instead, the issue is whether the existence of a no-support order means that the parent subject to it was under no obligation to provide maintenance and support." (Footnote explaining the term "no-support order" omitted.) *Id*. at ¶ 16. *B.I.* was about whether a natural parent's reliance on and compliance with a zero-child-support order meant that he had met his court-ordered obligation of support. *Id*.

**{¶ 60}** Our decision in *B.I.* does not announce a rule of law that is inconsistent with the court of appeals' prior decision in this case. It is not an intervening decision that provides an exception to the law-of-the-case doctrine and permits the lower courts to disregard the mandate from this court leaving in place the court of appeals' holding that the father's consent was not required for the adoptions. Our decision in *B.I.* is not based on the same facts or law at issue in this case.

**{¶ 61}** Therefore, our denial of the father's discretionary appeal resulted in the appellate court's original judgment—that there was no justifiable cause for his

failure to have contact with his children in the year preceding the filing of the petitions for adoption—becoming the law of the case. The question whether he had justifiable cause for his failure to have contact is not properly before us.

{¶ 62} Once this court determines that the law-of-the-case doctrine applies, our analysis should end. But the lead opinion attempts to fix this fatal flaw by ignoring the factual and legal differences in the two cases and by conflating the provisions of R.C. 3107.07(A). As a result, the lead opinion's conclusion is contrary to the plain and unambiguous language of the statute.

**Plain and unambiguous language of R.C. 3107.07(A)**

{¶ 63} " 'Decisions are the hardest moves to make, especially when it's a choice between what you want and what is right.' " Unknown.

{¶ 64} This court must respect the fact that the constitutional authority to legislate was conferred solely on the General Assembly, Article II, Section 1, Ohio Constitution, and that it is the province of the General Assembly to make policy decisions, *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. It is undisputed that "[j]udicial policy preferences may not be used to override valid legislative enactments." *State v. Smorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990), *superseded by statute on other grounds as stated in State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 54.

{¶ 65} A court's main objective in statutory construction is to determine and give effect to the legislative intent, and to determine intent, we must first look to the words of the statute itself. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "Words and phrases shall

be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

{¶ 66} When there is no ambiguity, we must abide by the words employed by the General Assembly, *see State v. Waddell*, 71 Ohio St.3d 630, 631, 646 N.E.2d 821 (1995), and have no cause to apply the rules of statutory construction, *see Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22-23. "We 'do not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347, 626 N.E.2d 939 (1994).

{¶ 67} Generally, in Ohio parental consent is a prerequisite to adoption. *McGinty v. Jewish Children's Bur.*, 46 Ohio St.3d 159, 161, 545 N.E.2d 1272 (1989). R.C. 3107.07(A) creates exceptions to the parental-consent requirement. A natural parent's consent to an adoption is unnecessary if a probate court determines

> by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition.

R.C. 3107.07(A).

{¶ 68} A plain reading of the statute demonstrates that there are two circumstances under (A) when a natural parent's consent to adopt is not necessary. The first circumstance is when the natural parent fails to have more than de minimis contact with the child or children in the year preceding the filing of the adoption

petition without justifiable cause. The second circumstance is when the natural parent has failed to provide maintenance and support as required by law or judicial decree in the year preceding the filing of the petition for adoption without justifiable cause.

**{¶ 69}** A plain reading of the de minimis contact provision provides that there are only two elements for the court to consider. The court begins with the inquiry whether there was more than de minimis contact in the year preceding the filing of the petition for adoption. If there was more than de minimis contact during that time, the court's inquiry ends. But if there was not more than de minimis contact during that time, the court must consider the second element—whether the lack of contact was justified.

**{¶ 70}** A plain reading of the maintenance-and-support provision provides that there are three elements for the court to consider. The first consideration, as we said in *B.I.*, is what the applicable judicial decree required for maintenance and support. 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, at ¶ 15. The second consideration is whether the parent met his or her obligation under the judicial decree. *Id*. If the parent has met that obligation, then the court's inquiry ends. But if the parent has not met that obligation, then the court must determine whether there was justifiable cause for that failure.

**{¶ 71}** The judicial-decree element of the three-part test for determining whether the maintenance-and-support provision is satisfied comes directly from the statutory language of R.C. 3107.07(A). There is no judicial-decree language in the de minimis contact provision. Therefore, whatever contact a judicial decree orders between a parent and his or her child is not relevant to the probate court's inquiry regarding whether the parent had more than de minimis contact with the child. The question is simply whether there was more than de minimis contact.

**{¶ 72}** In this case, the lead opinion applies our three-part maintenance-and-support test established in *B.I.* to a two-part de minimis contact case. The lead

opinion claims that "there is no logical reason why the analysis should be any different" when considering a contact case as opposed to a maintenance-and-support case. Lead opinion, ¶ 15. But that conclusion is erroneous. There *is* a logical reason to analyze the two provisions differently: the plain, unambiguous language of the statute.

{¶ 73} The evaluation of a de minimis contact case does not start with the question "What does the judicial decree say?" It starts with the question "Was there more than de minimis contact?" The lead opinion applies the wrong test to this case and has to pretend that this case and *B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, are the same type of case to avoid the law-of-the-case doctrine. And in avoiding the law-of-the-case doctrine, the lead opinion creates an unacceptable consequence for the children in this case: an inability to enjoy their right to an intact childhood and a loving adoptive family.

**Conclusion**

{¶ 74} In this case, the father has not had contact with his children, A.K. and C.K., for at least 14 years. The probate court determined that the father lacked justifiable cause for not contacting his children, the court of appeals affirmed that judgment, *A.K.*, 2017-Ohio-9165, and we declined to accept the father's discretionary appeal, 152 Ohio St.3d 1468, 2018-Ohio-1795, 97 N.E.3d 502. Because the law at issue in this case is not the same as the law at issue in *B.I.*, the intervening-decision exception to the law-of-the-case doctrine does not apply. Moreover, since the issue of justifiable cause was determined by the probate court and affirmed by the appellate court and this court declined to accept jurisdiction over an appeal from the appellate court's judgment, under the law-of-the-case doctrine, that decision—that the father did not have justifiable cause—is the law of this case. I therefore dissent and would reverse the judgment of the appellate court and remand this matter to that court for it to review the probate court's best-interest determination.

DONNELLY, J., concurs in the foregoing opinion.

————————————

Law Offices of James B. Palmquist III and Rebecca Clark; and Michelle K. McGuire, for appellants.

Mary Catherine Barrett Co., L.P.A., and Mary Catherine Barrett, for appellee.

————————————