[Cite as *In re N.R.H.N.*, 2020-Ohio-4266.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |  |
|---|---|---|---|
| IN RE: | : | | |
| N.R.H.N., et al. | : | CASE NO. CA2020-05-024 | |
| | : | O P I N I O N<br>8/31/2020 | |
| | : | | |
| | : | | |
| | : | | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 19 AD 1577

Kroener Hale Law Firm, Andrew J. Helmes, 101 N. Riverside Drive, Batavia, Ohio 45103, for appellant

Kelly & Wallace Co., LPA, Bruce S. Wallace, P.O. Box 3740, Mt. Orab, Ohio 45154, for appellee

**PIPER, J.**

{¶1}   Appellant, the stepfather of two children, appeals a decision of the Clermont County Probate Court determining that the consent of the children's father was required for the stepfather's adoption of the children.

{¶2}   Appellant filed a petition to adopt his two stepchildren, N.R.H.N. and B.L.N.,

on February 22, 2019. The petition alleged that the consent of the children's father was not required because the father had failed to provide more than de minimis contact with the children in the year preceding the petition. The father objected to the petition. After a hearing, a magistrate determined that the father's consent was required. The trial court overruled the stepfather's objections to the magistrate's decision, finding that while the father failed to communicate with the children, there was justifiable cause for the father's failure to communicate.

{¶3} The stepfather now appeals the probate court's decision that the father's consent was required and raises the following assignment of error for our review:

{¶4} THE COURT ABUSED ITS DISCRETION IN FINDING "JUSTIFIABLE CAUSE" FOR APPELLEE'S FAILURE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILDREN DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF APPELLANT'S PETITION.

{¶5} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re Adoption of A.N.L.*, 12th Dist. Warren Nos. CA2004-11-131 and CA2005-04-046, 2005-Ohio-4239; see also *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, (1982). Because adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists. *In re Caudill*, 4th Dist. Jackson No. 05CA4, 2005-Ohio-3927; R.C. 3107.06.

{¶6} An exemption to parental consent exists if a court finds that in the year preceding the adoption petition, the parent failed without justifiable cause to have more than de minimis contact with the child or failed to provide support and maintenance for the child. R.C. 3107.07(A). In this case, the stepfather alleged that the father's consent was not required because the father had failed without justifiable cause to communicate with the children in the one year preceding the petition.

- 2 -

{¶7} When a petitioner for adoption alleges that a parent's consent is not required based on a failure to communicate, the burden is on the petitioner to establish by clear and convincing evidence both that the parent failed to communicate and that the failure was without justifiable cause. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 22; *In re Adoption of Holcomb*, 18 Ohio St.3d 361, (1985), paragraph four of the syllabus. Once the petitioner has established the failure to communicate, the burden of going forward shifts to the parent to show some facially justifiable cause for that failure. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104 (1987). The burden of proof, however, remains with the petitioner. *Id.*

{¶8} In this case, the parties do not dispute the trial court's determination that the father failed to provide more than de minimis contact with the children. At the hearing, the father testified that the last contact he had with the children was in June 2016. However, the trial court determined that justifiable cause existed for the father's failure to communicate.

{¶9} Justifiable cause can be established with evidence that there was significant interference or significant discouragement of communication by the child's custodian. *Holcomb*, 18 Ohio St.3d. 361, at paragraph three of the syllabus. Where substantial efforts of the child's custodian have deprived a parent of the opportunity to enjoy a meaningful relationship with her child, the law should not further reward the custodian's discordant efforts in a nonconsensual adoption proceeding. *See In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 23. The probate court is not restricted to focusing solely on the one-year statutory period in making this determination. *Id.*; *In re S.A.N.*, 12th Dist. Warren No. CA2019-03-025, 2019-Ohio-3055, ¶ 18.

{¶10} This determination "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of M.B.*, 131 Ohio St.3d 186,

2012-Ohio-236, ¶ 24. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial." (Internal quotations omitted.) *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61 at ¶ 14. In so doing, we must be mindful the probate court "is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony." *In re Adoption of C.A.L.*, 12th Dist. Clermont No. CA2015-01-010, 2015-Ohio-2014, 29.

{¶11} At the hearing, the father testified that he last saw the children in June 2016. The father stated that the following weekend, the mother messaged him for help in paying for the children's soccer sign-up fees and he met her to help pay for those fees. The father testified that the next weekend, the mother messaged him again, asking for more money, but when he told her he couldn't give her more money, the mother stated, "I guess you don't want to see your children too badly then, do you?"

{¶12} The father testified that he has not seen his children since that time. He admitted that he spent some time incarcerated, including most of 2018. In July 2018 he was sent to the Brown County jail for some time until he was sent to a corrective thinking behavior modification center in Franklin Furnace, Ohio. He indicated that the program was an inpatient program that included substance abuse treatment. The father completed the program and was released on Friday, January 22, 2019 and on the following Monday morning, filed a petition with the juvenile court for visitation with the children. He testified that he did not know where the children were living at that time. When he filed the petition for visitation, the juvenile court provided him with the mother's address.

- 4 -

{¶13} The father also testified that sometime in the middle of 2018, between trips to jail, he tried to call the phone number that he had for the mother, but there was no answer and no return message. He further testified that he is blocked by the mother on the social network Facebook and had no other means of communication with the mother. He also testified that his family members tried to reach out to the mother, but they were unsuccessful. The father's sister testified that she tried to contact the mother, but the mother blocked her on Facebook. Father's sister also testified that she tried to get the mother's address from CSEA, but they would not provide that information to her. Father's sister-in-law testified that she sent the mother a message on Facebook in 2016 when the children's paternal grandfather died but did not receive a response.

{¶14} The mother testified that she has not received any type of contact from the father since around the time he last saw the children in 2016. She stated that she has had the same phone number for around five years. She testified that she moved in 2017, about a year after father's last visit with the children, and that she did not inform him of her new address. The mother testified that she has never told the father that he could not see his children and she has not blocked anyone on Facebook. She testified that she does not remember asking the father for money and telling him "I guess you don't want to see your children very much."

{¶15} The trial court considered the evidence and noted that the parties had cooperated with each other to facilitate parenting time and there was no formal court order regarding parenting time prior to the father's request in 2019. The trial court considered cases where no visitation orders existed in determining that courts view a noncustodial parent who does not have a court order for parenting time differently from a parent who has court-ordered parenting time and failed to take advantage of the opportunities under that order. See *In re Adoption of S.S.*, 3rd Dist. Van Wert No. 15-17-06, 2017-Ohio-8956; *In re*

*Adoption of E.E.B.*, 5th Dist. Richland No. 17 CA107, 2018-Ohio-1021. The court considered the fact that a parent without court-ordered parenting time has less control of visitations.

{¶16} The trial court determined that after the mother's comments, the father was left with the perception that he would not be able to see his children if he did not provide additional money. The trial court also found that mother moved and father's family members attempted to learn her new address from the child support agency, but were unsuccessful. The court further found that this, along with unreturned messages on Facebook led father's family to believe that it would be futile for father to attempt to contact the children through mother's voluntary cooperation any longer.

{¶17} The trial court also found that the father took a definite, decisive move toward establishing contact with his children during the year preceding the petition when he filed for visitation rights on January 25, 2019. However, immediately following the filing of the father's visitation petition, the stepfather and mother were married on February 5. The stepfather's petition to adopt the children was then filed on February 22 and the visitation motion was stayed pending resolution of the adoption case. The trial court determined that if the adoption petition had not been filed, the father's visitation motion would have been heard and a decision rendered to facilitate contact between the father and children. Based on these facts, the trial court concluded that the stepfather failed to meet his burden of establishing that the father's lack of contact was without justifiable cause.

{¶18} As mentioned above, as a reviewing court we must be mindful of the fact that the trial court was in the best position to view the witnesses, and therefore observe the demeanor of the parties and assess the credibility and accuracy of the testimony. It was the petitioner's burden to establish by clear and convincing evidence that the lack of contact was without justifiable cause. Moreover, the burden of proof is on the petitioner and any

exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of the natural parents to raise and nurture their children." *In re Adoption of Schoeppner,* 46 Ohio St.2d 21, 24 (1976).

{¶19} After a review of the record, we find the trial court's determination that the stepfather failed to meet this burden is not against the manifest weight of the evidence. Without a visitation order, the father was dependent on the mother to allow visitations. The mother gave the father the impression that if he did not contribute additional money for the children, he would not be allowed to visit. The mother moved and did not give the father her new address. Family members were unable to contact the mother and messages to her were not returned. The father then filed for visitation of the children as soon as possible after completing an inpatient program and the mother responded by marrying the stepfather, who then filed the adoption petition. Given these facts, the trial court did not err in determining there was justifiable cause for the father's failure to contact the children. Accordingly, appellant's assignment of error is therefore overruled[1].

{¶20} Judgment affirmed.

S. POWELL, J., concurs.

M. POWELL, P.J., dissents

**M. POWELL, P.J., dissenting.**

{¶21} I respectfully dissent from the majority opinion because the weight of the evidence does not show that father had justifiable cause in failing to have more than de

---

1. We greatly appreciate the dissent's assignment of weight to certain evidentiary aspects reaching a different determination than the trial court. However, mindful that the trial court is in a "better position" to observe demeanor, assess credibility, and determine the accuracy of testimony, we do not find the trial court has "clearly lost its way" as our standard of review requires. The trial court's determination pays "due deference" to the Ohio Legislature's intended protection of the fundamental liberty interest of natural parents. *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 367 (1985).

minimis contact with his children.

{¶22} Pursuant to R.C. 3107.07(A), the consent of a parent to an adoption is not required if the parent "has failed without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year immediately preceding either the filing of the adoption petition or placement of the minor in the home of the petitioner." The reason why the failure of more than de minimis contact must be without justifiable cause is that "[w]here substantial efforts of the child's custodian have deprived a parent of the opportunity to enjoy a meaningful relationship with her child, the law should not further reward the custodian's discordant efforts in a nonconsensual adoption proceeding." *In re S.A.N.*, 12th Dist. Warren No. CA2019-03-025, 2019-Ohio-3055, ¶ 18. In order to show justifiable cause for the failure of contact with a child, a non-consenting parent is required to produce evidence that there was significant interference or significant discouragement of communication by the child's custodian. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, (1985) at paragraph three of the syllabus.

{¶23} In considering whether mother significantly interfered with or discouraged father's contact with the children, the parties' historical relationship and pattern of visitations are important factors. Consideration of these factors, while not restricted to the one-year look back period, provide context to the events occurring within that look-back period. *See In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 23; *In re S.A.N.* at ¶ 18.

{¶24} Mother testified that prior to his last visit with the children in 2016, father was not visiting the children very much. Father's visitation was inconsistent. Father would visit with the children for a few months; then father would cease visits; and then father would begin to visit again. Shortly before the time of the last visit, mother spoke with father and encouraged him to become more consistently involved with the children. Specifically,

mother discussed with father her concern that the children were developing separation anxiety and it was not fair to the children that he "wasn't a full-time father."  Mother told father that it was not her job to reach out and set up visits.  She told father that if he went to jail again, it was his job to reach out and set up visits.  Father then did not communicate in any way with the children after the June 2016 visitation.

{¶25}  In June 2017, about a year after father's last visit with the children, mother moved to a different home.  Mother did not notify father of her move.  However, the record of this case does not suggest that this was an effort by mother to frustrate father's contact with the children.  On the contrary, by the time mother moved, she had not heard from father for year and did not know where he was.  Furthermore, mother did not try to conceal her new address as she notified the child support agency, which is how father learned of it as discussed below.

{¶26}  Father testified that he spent most of 2018 incarcerated.  He testified that "[s]ometime in the middle of 2018, in between trips to jail" he tried to call mother at the number he had, but there was no return call.  When asked if he left a message, he stated, "I believe I did."  When asked why he did not try to contact the children between the time of the last visit and this mid-2018 phone call, father replied, "[b]etween being on the run and being incarcerated there was no good time * * * ."  After his release from a residential substance abuse treatment program in January 2019 and, having obtained mother's address from the juvenile court, father filed the motion for visitation.

{¶27}  Taken as a whole, mother's actions in this case do not show significant efforts to deprive father of a meaningful relationship with his children.  The trial court found that mother made a comment "I guess you don't want to see your children too badly then, do you?" to father after he refused to provide additional money for the children. Significantly, there is no evidence that prior to this time mother had done anything to interfere with or

discourage father's communication with the children. Yet, after this single, ambiguous comment, made by mother in a moment of frustration, father's only effort to contact the children was one telephone call to mother in mid-2018.

{¶28} The only other evidence offered by father bearing upon whether mother interfered with or discouraged father's contact with the children concerns contact by his family members. Father's family members testified that they sent Facebook messages to mother that went unreturned. However, none of these Facebook messages invited a response from mother or concerned the children.

{¶29} Finally, shortly after the father filed his motion for visitation, mother and stepfather married and stepfather filed a petition to adopt the children. The trial court found that if not for these actions, the visitation petition would have been heard and a visitation schedule ordered. "Depending on the facts of the case, the filing of such a motion could be evidence of significant interference with a parent's visitation rights * * *." *In re Adoption of L.S.*, 3d Dist. Hancock No. 5-19-20, 2020-Ohio-224, fn. 2. However, the facts of this case do not support such a finding. In this case, marriage and the petition to adopt came after a three-year absence by father during which time stepfather was a part of mother's and children's lives. While mother's marriage to stepfather and stepfather's filing of the adoption petition are indicative that mother no longer wants father involved with the children, such an attitude is reasonable based upon father's prolonged absence from the children's lives and father's checkered past. Under these circumstances, stepfather's adoption petition is not part of a continued pattern of interference with visitation by the custodial parent. See e.g. *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, ¶ 46. Rather than a part of a continued pattern of interference with visitation, the adoption petition sought only legalized the practical situation that father had permitted to persist for nearly three years.

{¶30} The focus in determining justifiable cause should be on the custodial parent's

actions and whether there was significant interference which would excuse the non-custodial parent's failure to communicate.  In determining whether justifiable cause exists, the court should examine whether the non-custodial parent simply has not tried or whether the lack of contact is attributable to the custodial parent's actions.  *See In re S.A.N.*, 2019-Ohio-3055, ¶ 18-20.

{¶31}  In this case, father's record of inaction weighs heavily in favor of determining that the lack of contact was not attributable to mother.  Accordingly, I would find that there was not justifiable cause for father's failure to have more than de minimis contact with the children and his consent to the adoption petition is not required.

{¶32}  With regard and respect for my colleagues in the majority, I dissent.