[Cite as *In re Adoption of A.O.P.*, 2022-Ohio-2532.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO. CA2022-04-013 |
| THE ADOPTION OF A.O.P. | : | O P I N I O N<br>7/25/2022 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2021 AD 01676

Mother, pro se.

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellants.

**M. POWELL, P.J.**

{¶ 1} Appellants, E.P. and D.P. ("Petitioners"), appeal the decision of the Clermont County Court of Common Pleas, Probate Division, finding appellee, L.D. ("Mother"), the biological mother of A.O.P., must give her consent before the child could be adopted. For the reasons discussed below, we affirm the probate court's decision.

{¶ 2} A.O.P. was born on April 25, 2018 to Mother and M.C. ("Father"). Due to Mother's drug addiction and criminal history and Father's incarceration, A.O.P. was placed

into the custody of Petitioners on July 19, 2018. Subsequently, a Butler County Juvenile Court magistrate, pursuant to a magistrate's decision of November 6, 2018, recommended that Petitioners be awarded legal custody of A.O.P. The juvenile court overruled Mother's objections to the magistrate's decision and adopted it as an order of the court by judgment entry of January 16, 2019. Pursuant to the Butler County Juvenile Court's order, Mother had visitation with A.O.P. at the Petitioners' discretion. The order did not establish a child support obligation for Mother or Father.

{¶ 3} On January 19, 2021, Petitioners filed a petition in the Clermont County Probate Court for the adoption of A.O.P. The petition alleged that Mother and Father had failed without justifiable cause to have more than de minimus contact with A.O.P. or to provide maintenance and support for her for the one-year period immediately preceding the filing of the adoption petition. Mother was served with the petition on February 5, 2021, and timely objected. Father failed to object.

{¶ 4} The matter proceeded to an evidentiary hearing on July 28, 2021. The evidence at the hearing revealed the various communications between Mother and Petitioners during the one-year look-back period. On January 22, 2020, Mother sent a letter to Petitioners requesting a visit with A.O.P. Petitioners agreed to permit Mother a one-hour, supervised visit at Brave Choices on February 11, 2020. Mother visited with A.O.P. on that date, reading to her and bringing her clothes, books, and toys. Following this visit, Mother sent text messages to Petitioners to arrange another visit with A.O.P. The second visit was scheduled for March 6, 2020 at Chick-Fil-A. On that date, Mother again brought A.O.P. toys and played with her on the playground. This visit lasted a little over an hour.

{¶ 5} On March 11, 2020, the state of Ohio instituted an emergency lockdown in response to the COVID-19 pandemic. Petitioners took the pandemic seriously and did not want A.O.P. leaving their home or associating with people beyond their immediate

household. However, Mother remained in contact with Petitioners, and they exchanged text messages, which included photos and videos of A.O.P. Mother sent A.O.P. gifts and a card for her birthday in April 2020. Mother and Petitioners also arranged a FaceTime visit between Mother and A.O.P. on April 25, 2020. However, FaceTime visits were difficult to coordinate due to Petitioners' unreliable internet access, which required that they travel to a restaurant for an internet connection sufficient to support a video call. Mother expressed to Petitioners that she hoped in-person visits could resume once the pandemic passed.

{¶ 6} Mother's ability to visit with A.O.P. was also hampered due to her addiction treatment responsibilities. Mother was engaged in an intensive outpatient program from February 20 to May 14, 2020, which consisted of three three-hour meetings per week plus counselling and psychiatry sessions. In May 2020, Mother's treatment regimen was reduced to outpatient treatment consisting of two support meetings per week in addition to continued counselling and psychiatry sessions. On June 9, 2020, Mother admitted herself to an inpatient program to wean herself off Suboxone. While in this program, Mother was not permitted to have a phone or other means of communication with the outside world. Mother was discharged from the program on June 28, 2020, and went to live temporarily with a cousin in Portsmouth, Ohio. Due to continued cravings for drugs, Mother again admitted herself to an inpatient treatment program from July 9 to August 5, 2020. While in this program, Mother's means of communication with the outside world were again restricted. Petitioners were informed of Mother's situation.

{¶ 7} Once Mother was released from this program, she contacted Petitioners to arrange another visit with A.O.P. An outdoor visit, where all were masked, was arranged for August 30, 2020, and Mother once again brought A.O.P. gifts and spent time with her. On September 8, 2020, Mother contacted Petitioners to thank them for the August visit and expressed hope that they could reconnect soon. However, due to the worsening pandemic

conditions, this visit would be the last Mother would have with A.O.P. prior to the filing of the adoption petition. Mother recontacted Petitioners on December 3, 2020, asking about A.O.P. and expressing hope to see her after Christmas to give her gifts. Mother's last communication with Petitioners prior to the filing of the adoption petition was on January 16, 2021 forwarding to Petitioners photographs of A.O.P.'s half-brother.

{¶ 8} Mother never provided any financial support to Petitioners for A.O.P. However, neither did Petitioners seek or request financial support from Mother. Mother's offer to Petitioners through her mother, to buy a car seat for A.O.P. was declined. Mother had no source of income other than an Electronic Benefits Transfer ("EBT") card for food stamps and occasional "allowance" from her father for work performed around his home, where she lived. In the one-year period immediately preceding the filing of the adoption petition, Mother applied for jobs with approximately fifteen different prospective employers. However, she was unsuccessful in obtaining employment due to her criminal history, her substance abuse treatment schedule, her familial responsibilities, and the COVID-19-depressed economy. Mother relied upon her family to support her during this time, including housing, transportation, clothing, personal care items, driver license reinstatement fees, and child support payments for her son. Although Mother received three COVID-19 stimulus checks, the first was seized to pay her child support arrearages for her son.

{¶ 9} By decision dated August 19, 2020, the magistrate determined that Mother had more than de minimus contact with A.O.P. during the look-back period, and that even if she did not, there would have been justifiable cause due to Mother's lack of transportation, the COVID-19 shutdown, and her substance abuse treatment.[1] Although the magistrate

_____

1. By a separate decision on August 19, 2020, the magistrate determined that Father's consent was not required pursuant to R.C. 3107.07(A). The probate court subsequently adopted that finding, and Father has not appealed that determination.

found that Mother had failed to provide maintenance and support for A.O.P. during the look-back period, the magistrate found that there was justifiable cause due to Mother's lack of income, inability to obtain employment, Petitioners' not seeking support and declining offers of the same, and Mother's belief that Petitioners were able to adequately support A.O.P.

{¶ 10} Petitioners objected to the magistrate's decision. By judgment entry dated March 14, 2022, the probate court overruled Petitioners' objections and adopted the magistrate's decision as an order of the court. Petitioners appealed, raising the following assignment of error.

{¶ 11} THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT MOTHER'S CONSENT WAS NECESSARY REGARDING THE ADOPTION OF A.O.P.

{¶ 12} In their sole assignment of error, Petitioners argue that the trial court erred in finding that Mother's consent was necessary for A.O.P.'s adoption. Specifically, they argue that Mother failed without justifiable cause to have more than de minimis contact with A.O.P. in the year prior to the adoption petition, and that she failed without justifiable cause to provide maintenance and support for A.O.P. in the same timeframe.

**Rule of Law**

{¶ 13} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re A.M.G.H.*, 12th Dist. Clermont No. CA2019-10-079, 2020-Ohio-534, ¶ 10. An adoption permanently terminates those parental rights of a natural parent. *In re Adoption of M.R.P.*, 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, ¶ 15. Because adoption terminates those rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists. *In re Adoption of L.L.L.*, 12th Dist. Preble No. CA2018-07-008. 2018-Ohio-4556, ¶ 19. "[A]ny exception to the requirement of parental consent to adoption must be strictly construed so as to protect the

right of natural parents to raise and nurture their children." *In re B.N.S.*, 12th Dist. Butler Nos. CA2020-03-034, CA2020-03-035, and CA2020-03-036, 2020-Ohio-4413, ¶ 27, *see also In re Adoption of A.K.*, Slip Opinion No. 2022-Ohio-350, ¶ 20.

{¶ 14} An exemption to parental consent exists if a court finds, after notice and a hearing, that in the year preceding the adoption petition, the parent failed without justifiable cause to have more than de minimis contact with the child or the parent failed to provide maintenance and support for the child. *In re M.E.F.*, 12th Dist. Clinton No. CA2018-10-017, 2019-Ohio-1291, ¶ 12, citing R.C. 3107.07(A). This creates a two-step analysis: (1) determine whether the parent failed to engage in more than de minimis contact with the child or failed to provide for the maintenance and support to the child in the year immediately preceding the filing of the adoption petition, and (2) determine whether the parent had justifiable cause for the failure to contact the child or provide maintenance and support for the child. *In re Adoption of C.E.S.*, 12th Dist. Butler Nos. CA2020-07-069, CA2020-07-070, and CA2020-07-071, 2020-Ohio-6902, ¶ 21. The first element is written in the alternative; as a result, the probate court need only find either a lack of contact with the minor or a failure to provide maintenance and support to the minor. *In re Adoption of O.J.B.*, 12th Dist. Warren No. CA2020-01-004, 2020-Ohio-4184, ¶ 9.

{¶ 15} "[T]he petitioner in an adoption proceeding bears the burden of proving by clear and convincing evidence the satisfaction of an exception to the general requirement that an adoption may not proceed without parental consent." *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, ¶ 31. This means "[t]he petitioner bears the burden of proving *each element* by clear and convincing evidence." *In re Adoption of O.J.B.* at ¶ 10. (Emphasis added.) After the petitioner has established the parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although, the burden of proof remains on the petitioner. *Id.*

**Standard of Review**

{¶ 16} An appellate court applies two different standards of review to the probate court's decision on parental consent. *Id.* at ¶ 11. This court applies an abuse of discretion standard of review as it relates to the probate court's decision as to whether a parent's contact with his or her child, or provision of maintenance and support for his or her child, met the statutory standard. *In re Adoption of C.E.S.* at ¶ 22. An abuse of discretion is more than an error of law or judgment; rather, it suggests the trial court's decision was unreasonable, arbitrary or unconscionable. *In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 16.

{¶ 17} Conversely, as it relates to the probate court's decision on whether a parent had justifiable cause for the failure to contact or provide maintenance and support to his or her child, this court applies a manifest weight of the evidence standard of review. *In re Adoption of C.E.S.* at ¶ 23. On a manifest weight of the evidence review, this court examines the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of E.C.G.*, 12th Dist. Clinton No. CA2020-09-014, 2021-Ohio-276, ¶ 25. In so doing, we must be mindful the probate court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony. *In re N.R.H.N.*, 12th Dist. Clermont No. CA2020-05-024, 2020-Ohio-4266, ¶ 10.

**Analysis**

{¶ 18} The probate court found that Petitioners failed to prove by clear and convincing evidence that Mother failed without justifiable cause to maintain more than de minimis contact with A.O.P. or to provide maintenance and support in the one-year period

immediately preceding the filing of the petition for adoption. Petitioners dispute these findings, arguing that even if Mother was in regular contact with Petitioners regarding A.O.P., Mother's contacts with A.O.P. herself were de minimis. Additionally, they argue that Mother's substance use treatment, lack of transportation, and the COVID-19 pandemic did not constitute justifiable cause for Mother's failure to have greater contact with A.O.P. during the look-back period. Finally, Petitioners argue that Mother's lack of employment was voluntary, and as such, she had no justifiable cause for her lack of maintenance and support. As explained below, we find Petitioners' arguments unpersuasive.

*Mother's Contact with A.O.P. and Provision of Maintenance and Support to A.O.P.*

{¶ 19} Our first step in addressing Petitioners' assignment of error is deciding whether the probate court abused its discretion in determining that Mother engaged in more than de minimis contact with A.O.P. during the look-back period. *In re Adoption of C.E.S.*, 2020-Ohio-6902, at ¶ 21. The parties did not dispute that Mother failed to provide maintenance and support to A.O.P., and the probate court accordingly found the same. *See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 29 ("De minimis monetary gifts from a biological parent to a minor child do not constitute maintenance and support, because they are not payments as required by law or judicial decree as R.C. 3107.07[A] requires"). This finding has not been appealed.

{¶ 20} In determining whether Mother had more than de minimis contact with A.O.P., the probate court listed the contacts Mother made with A.O.P., and with Petitioners regarding A.O.P., during the look-back period. This included three in-person visits, one FaceTime call, one letter, and numerous text messages. It noted that the evidence showed that "[w]hile she may not have asked about [A.O.P.] specifically on each text, or always called her by name, there is no doubt that [Mother] was trying to keep the lines of communication open so that she could have a presence in her daughter's life." It also noted

that "[t]hese contacts appear to be more than half-hearted attempts to maintain a relationship." As such, the probate court concluded that "the petitioners have failed to prove by clear and convincing evidence that the mother failed to maintain more than de minimis contact with the child."

{¶ 21} Our review of the record indicates that the probate court did not abuse its discretion in finding that Mother had more than de minimis contact with A.O.P. during the look-back period. Pursuant to the Butler County Juvenile Court's order, visitation may only occur at Petitioners' discretion. It is true that Petitioners never denied Mother visitation when she asked for it, but they also made clear their desire to limit A.O.P.'s contact with people outside their household in response to the COVID-19 pandemic. On the occasions Mother was permitted to visit with A.O.P., Petitioners limited the timeframe of the visits. Mother understood that Petitioners were not comfortable providing visitation while COVID-19 infection rates rose, and therefore did not request visitation as often as it is clear she otherwise would have.

{¶ 22} We agree with the probate court that "there is ample credible evidence that the mother would have requested more in-person visits if it had not been for [COVID-19] concerns. The communications between [Mother and Petitioners] demonstrate this concern, and the parties do not dispute that this had an impact upon visitation." Testimony is likewise clear that Mother would have requested more frequent FaceTime visits had these not proven so difficult to set up. The fact that Mother set up three in-person visits during a one-year period in a global pandemic in which she at various times lacked a cell phone or a vehicle demonstrates that her contact with A.O.P. was more than de minimis. As such, we find that the probate court did not abuse its discretion.

*Justifiable Cause*

{¶ 23} We next address whether the probate court erred in alternatively finding that even if Mother's contact with A.O.P. was de minimus, there would have been justifiable cause, as well as in its finding that there was justifiable cause for Mother's failure to provide maintenance and support to A.O.P. The question of whether justifiable cause has been proven by clear and convincing evidence in a particular case is a determination for the probate court. *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 16. As previously noted, as it relates to the probate court's decision on whether a parent had justifiable cause for the failure to contact or provide maintenance and support to his or her child, this court applies a manifest weight of the evidence standard of review. *In re Adoption of C.E.S.*, 2020-Ohio-6902, at ¶ 23. "'This standard of review is highly deferential'" and "'[w]e will not reverse a trial court's decision as being against the manifest weight of the evidence if some competent, credible evidence supports it.'" *Estate of Hand*, 12th Dist. Butler No. CA2016-02-034, 2016-Ohio-7437, ¶ 28, quoting *In re Jordan*, 4th Dist. Pike No. 08CA773, 2008-Ohio-4385, ¶ 9.

{¶ 24} Even if a parent has completely failed to communicate with his child during the one-year statutory period, his consent will still be required if there is justifiable cause for the failure. *In re M.G.B.-E.*, 12th Dist. Clinton No. CA2018-10-016, 2019-Ohio-753, ¶ 12. As established above, that was not the case here. However, both the magistrate and the probate court made an alternative finding that even if Mother's contact with A.O.P. was shown to be de minimis, there would have been justifiable cause. The probate court noted that Mother "had several circumstances which prevented her from having more contact with" A.O.P., citing not only Mother's frequent lack of reliable transportation, lack of a cell phone, and intensive inpatient substance use treatment, but also Petitioners' limited availability by phone or FaceTime. D.P. "did not keep her phone on her during the daytime,

and that she usually just looked at it after [A.O.P.] went to bed." This meant that "if mother called the petitioners after [A.O.P.] went to bed, mother would have been unable to talk to [A.O.P.]," since the child was "too young to have a cellphone in order for her mother to call her directly."

{¶ 25} We agree with the probate court's alternative finding that Mother would have had justifiable cause for making de minimis contact with A.O.P. The COVID-19 pandemic alone and Petitioners' response to it is a significant factor in establishing justifiable cause. The probate court cited a case from the Eighth Appellate District in support of this reasoning. *In re Adoption of E.W.-D.H.*, 8th Dist. Cuyahoga No. 110705, 2022-Ohio-528. In that case, the mother testified that she was concerned about the child being out in public given the pandemic conditions. *Id.* at ¶ 12. The mother consequently limited visitation with the father for fear of the child's safety. *Id.* at ¶ 14. While she "did not 'outright' deny father's request, she expressed continuing concerns about the pandemic," which affected visitation. *Id.* at ¶ 34. The Eighth District concluded that "the lower court did not err in determining that father had justifiable cause for the failure to contact the child," citing among other factors "novelty of the global Covid-19 pandemic." *Id.* at ¶ 45.

{¶ 26} Here, testimony established that although Petitioners never denied Mother visitation, their repeated expression to Mother of concern led her to seek visitation less than she would have preferred. Because visitation occurred at Petitioners' discretion, the probate court found that "Mother was at the mercy of the petitioners when it came to visitation" and that "Mother tried to respect the Petitioners' wishes [regarding the pandemic], and should not be penalized now for doing what she believed to be in the best interest of [A.O.P.] and her custodians." Additionally, we find that Mother's voluntary seeking of treatment for her substance use should not be held against her in determining whether there was justifiable cause for making only de minimis contact with A.O.P. After reviewing the

entire record, weighing inferences, and examining the credibility of witnesses, we find that sufficient credible evidence existed to support the probate court's alternative determination that there would be justifiable cause if Mother was found to have made only de minimis contact with A.O.P. during the one-year look-back period.

{¶ 27} We next address the probate court's finding that Mother had justifiable cause for failing to provide maintenance and support to A.O.P. during the look-back period. This court has previously recognized that "'ability to pay is a key factor in determining whether there is justifiable cause for failure to support a child.'" *In re Adoption of O.J.B.*, 2020-Ohio-4184, at ¶ 18, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 167 (1986). The probate court found that Mother was unemployed and unable to obtain employment. While testimony made clear that Mother was offered one job out of the fifteen positions she applied for, there was also uncontested testimony that her familial obligations prevented her from accepting that position. As such, Mother lacked a regular source of income, so there was justifiable cause for her failure to offer maintenance and support to A.O.P. *See In re Adoption of Masa*, 23 Ohio St.3d at 167 (finding there was no evidence a father was financially able to support his child where his sole income was a monthly welfare check and documented attempts to find employment had not been successful).

{¶ 28} In light of the foregoing, and taking into consideration the totality of the circumstances, we find no error in the probate court's decision finding Petitioners had not met their burden of proof requiring them to prove, by clear and convincing evidence, that Mother had failed, without justifiable cause, to have more than de minimis contact with A.O.P. or provide for the maintenance and support of the child in the year immediately preceding the filing of the adoption petition. This is simply not one of those exceptional cases in which the evidence weighs heavily against the probate court's decision to render it against the manifest weight of the evidence. *In re Adoption of C.E.S.*, 2020-Ohio-6902,

at ¶ 33. Accordingly, finding no merit to any of the arguments raised by Petitioners herein, Petitioners' assignment of error lacks merit and is overruled.

**{¶ 29}** Judgment affirmed.

S. POWELL and PIPER, JJ., concur.