[Cite as *In re Adoption of N.M.Q.P.*, 2026-Ohio-1499.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE:                   :

    ADOPTION OF N.M.Q.P.       :

                                 :

                                 :

                                 :

CASE NO. CA2026-01-003

OPINION AND
JUDGMENT ENTRY
4/27/2026

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2023AD1813

Barbara J. Howard Co., L.P.A., and Melissa Thompson Millard and Rachel H. Myers, for appellee.

Kimberly V. Thomas, for appellant.

## O P I N I O N

**HENDRICKSON, J.**

{¶ 1} Appellant, the maternal grandmother of N.P. ("Maternal Grandmother"), appeals a decision of the Clermont County Court of Common Pleas, Probate Division,

finding that appellee, the biological mother of N.P. ("Mother"), must give her consent before N.P. could be adopted. For the reasons outlined below, we affirm the probate court's decision.

## I. Facts and Procedural History

{¶ 2}   N.P. was born in July 2020, shortly after Mother was released from prison for drug-related charges.[1] After N.P.'s birth, Mother and N.P. resided with Maternal Grandmother and her wife, Malissa, in their home. In February 2021, Mother and N.P. moved into an apartment in Newport, Kentucky with Mother's boyfriend at the time. This apartment was owned by Mother's father ("Grandfather").

{¶ 3}   In April 2021, Maternal Grandmother alerted her mother, i.e., Mother's grandmother, that Mother had relapsed. As a result, N.P. was removed from Mother's care and returned to live with Maternal Grandmother and Malissa (collectively referred to as the "Petitioners"), where she remained until the final hearing in this case. After Mother's relapse, Grandfather evicted Mother from the Newport apartment, leaving her homeless and unemployed.

{¶ 4}   In May 2021, Maternal Grandmother obtained an ex parte protection order against Mother, which identified N.P. as the protected person. Thereafter, the Clermont County Court of Common Pleas, Domestic Relations Division, issued a domestic violence civil protection order ("the DVCPO") against Mother. Relevant to the instant appeal, the DVCPO designated Maternal Grandmother the legal custodian of N.P., authorized Maternal Grandmother to make medical decisions for the child, and prohibited Mother from having contact with N.P. for a period of five years.[2] After obtaining the DVCPO,

---

1. N.P.'s biological father died shortly after her birth.

2. The protection order is effective until July 19, 2026.

Maternal Grandmother began to collect social security benefits on N.P.'s behalf. Those benefits totaled between $450 and $550 per month.[3]

{¶ 5}   In August 2021, Maternal Grandmother filed for custody of N.P. In January 2022, the Clermont County Court of Common Pleas, Juvenile Division, designated Maternal Grandmother the primary residential caretaker and legal custodian of the child. In its order, the court noted that Mother's parenting time was at the discretion of Maternal Grandmother and stated that "[n]o child support is ordered as none is requested at this time." At some point after February 2022, Mother learned that Maternal Grandmother had been awarded custody of N.P. and that she did not have a child support obligation.[4]

{¶ 6}   Between August 2021 and February 2022, Mother engaged in residential and intensive outpatient drug treatment. After finishing treatment, Mother moved to Kentucky and lived with her boyfriend's parents. Because Mother and her boyfriend were limited to a single vehicle, Mother remained unemployed during that time. Thereafter, in August 2022, Mother and her boyfriend leased an apartment in Reading, Ohio, and Mother obtained employment at a gas station within walking distance.

{¶ 7}   Between May 2022 and April 2023, Maternal Grandmother allowed regular visitation between Mother and N.P. This included visits at the Petitioners' home, contact via FaceTime, and visits during some holidays. Mother estimated she had weekly contact with N.P. during this period but acknowledged it could have been bi-weekly due to her work schedule.

---

3. The record reflects Mother obtained social security benefits for N.P. after the death of N.P.'s biological father. Maternal Grandmother testified that she began receiving those social security benefits on behalf of N.P. in June 2021 and that they increase each year.

4. Grandfather testified that Maternal Grandmother informed him that she had been awarded custody of N.P. and that Mother did not have a child support obligation. Grandfather informed Mother of Maternal Grandmother's comments.

{¶ 8} In late April 2023, the Petitioners informed Mother they planned to file for the adoption of N.P. Mother voiced her objection to the adoption at that time and informed the Petitioners she would not consent. After this discussion, the Petitioners did not permit Mother to visit with N.P.

{¶ 9} On May 8, 2023, the Petitioners filed a petition to adopt N.P., alleging that Mother's consent was not required under R.C. 3107.07 because Mother had failed, without justifiable cause, to provide for the maintenance and support of N.P. Mother filed an objection to the petition and the matter was set for a hearing.

{¶ 10} On December 6, 2023, Mother moved the probate court for summary judgment, arguing that because there is no court order requiring Mother to pay child support, she had justifiable cause for failing to financially support N.P. during the relevant look-back periods. Ultimately, the probate court denied Mother's motion for summary judgment, and set the matter for a hearing to determine if Mother's consent to the adoption is necessary, taking into consideration Mother's general duty to provide support and maintenance for N.P.[5]

{¶ 11} The matter proceeded to a two-day hearing on October 3 and October 25, 2024, at which the magistrate heard testimony pertaining to the issue of Mother's consent. Mother, the Petitioners, and Grandfather testified at the hearing. Following the presentation of the evidence, the magistrate found that Mother's consent was not required for N.P.'s adoption, as the Petitioners had proven, by clear and convincing evidence, that Mother had failed, without justifiable cause, to provide for the support and maintenance of N.P. in the year preceding the filing of the adoption petition.

---

5. In May 2024, Mother appealed from the probate court's decision denying her motion for summary judgment. In June 2024, this court dismissed Mother's appeal because there was no final appealable order.

{¶ 12} Mother filed timely objections. Following a hearing on Mother's objections, the probate court issued a written decision rejecting the decision of the magistrate and finding Mother's objections to be well-taken. In so doing, the probate court held that Mother's consent was required for N.P.'s adoption and that the Petitioners failed to prove by clear and convincing evidence that the failure of Mother to provide for the maintenance and support of N.P. during the look-back period was without justifiable cause. Instead, the court found that there were "several possible justifiable reasons for" Mother's "failure to provide support" for N.P. during the relevant period.

## II. Legal Analysis

{¶ 13} Maternal Grandmother now appeals, raising the following assignment of error for this court's review:

{¶ 14} THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANTS DID NOT MEET THEIR BURDEN TO SHOW THAT MOTHER'S FAILUER [SIC] TO PAY SUPPORT WAS JUSTIFIABLE.

{¶ 15} On appeal, Maternal Grandmother argues the probate court erred when it determined that Mother's consent was required for N.P.'s adoption. There is no dispute that Mother failed to provide meaningful support to her daughter within the relevant look-back period. Instead, Maternal Grandmother argues the probate court erred in finding that Mother's failure to provide support was justifiable.

### A. Rule of Law

{¶ 16} As a starting point, we are conscious of the fact that removing the requirement that a parent consent to an adoption in effect terminates a parent's parental rights. *See In re A.K.*, 2022-Ohio-350, ¶ 11. This is not a decision to take lightly. The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of C.M.F.*, 2013-Ohio-4719, ¶ 8 (12th Dist.).

Because adoption terminates the parental rights of a natural parent, Ohio law requires the parent's consent to an adoption unless a specific statutory exemption exists. *In re Adoption of A.N.B.*, 2012-Ohio-3880, ¶ 5 (12th Dist.). Due to the seriousness of the rights involved, "[a]ny exception to the requirement of parental consent must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24 (1976).

{¶ 17} R.C. 3107.07(A) excuses parental consent to adoption in two circumstances. *In re Adoption of A.O.P.*, 2022-Ohio-2532, ¶ 14 (12th Dist.). First, a parent's consent may be excused when the parent "has failed without justifiable cause to provide more than de minimis contact with the minor." Second, a parent's consent may be excused when the parent "has failed without justifiable cause . . . to provide for the maintenance and support of the minor as required by law or judicial decree." The parent's actions in both contexts are assessed during two separate one year look-back periods— (1) the one year immediately preceding the filing of the adoption petition and (2) the one year immediately preceding the placement of the minor in the adoption petitioner's home. *See* R.C. 3107.07(A).[6] Although the statute provides for two possible look-back periods, only one is pertinent to this case, i.e., the one year preceding the filing of the adoption petition. As such, we, like the probate court, will address the evidence related to the look-back period "starting one year before the filing of the adoption petition rather than an 'alternative look-back period.'" *See In re Adoption of R.R.*, 2022-Ohio-4813, ¶ 25 (4th Dist.).[7]

---

6. R.C. 3107.07(A) was amended in 2025. The Petitioners' petition was filed in May 2023. We cite the pre-2025 version of R.C. 3107.07(A) that was in effect at the time the Petitioners filed their petition, as no party has made an argument in this case that the 2025 amendments should be applied retroactively.

7. The probate court found the applicable look-back period is the one year immediately preceding the filing of the adoption petition. Neither party disputes that finding or raises it as an issue on appeal.

{¶ 18} The petitioner in an adoption proceeding bears the burden of proving the elements of a consent exemption by clear and convincing evidence. *In re Adoption of M.G.B.-E.*, 2018-Ohio-1787, ¶ 31. After the petitioner has established a parent's lack of contact or support, the parent bears the burden of going forward with evidence to show a facially justifiable cause for the failure, although the burden of proof remains on the petitioner. *In re Adoption of A.O.P.* at ¶ 15. That is, where the evidence establishes a lack of the requisite support, a parent may not simply remain mute and must demonstrate some facially justifiable cause for the failure. *In re Adoption of A.L.H.*, 2020-Ohio-3527, ¶ 8 (9th Dist.).

**B. Standard of Review**

{¶ 19} Whether a parent failed to provide maintenance and support for a child is a question of fact, which is reviewed for an abuse of discretion. *In re Adoption of S.J.M.H.*, 2014-Ohio-3565, ¶ 29. However, a probate court's finding of whether justifiable cause for a failure to provide support has been proven by clear and convincing evidence is reviewed under the manifest weight of the evidence standard. *In re Adoption of Masa*, 23 Ohio St.3d 163, 166 (1986). On a manifest weight of the evidence review, this court examines the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re Adoption of C.E.S.*, 2020-Ohio-6902, ¶ 23 (12th Dist.). "'This standard of review is highly deferential'" and "'[w]e will not reverse a trial court's decision as being against the manifest weight of the evidence if some competent, credible evidence supports it.'" *In re Adoption of A.O.P.* at ¶ 23, quoting *Estate of Hand*, 2016-Ohio-7437, ¶ 28 (12th Dist.).

**C. Justifiable Cause**

{¶ 20} As mentioned above, the probate court found that Mother failed to provide support for N.P. in the year preceding the adoption petition and neither party disputes that determination. In Ohio, there are two statuses of parental support obligations. *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 27. First, R.C. 3103.03 provides a general obligation of parents to support their children. *Id*. Second, there is a specific child-support obligation imposed by judicial decree that supersedes the general obligation. *Id*. Not every failure to provide support as required by law or judicial decree will mean that a parent's consent to an adoption is not required. *In re Adoption of E.W.*, 2024-Ohio-5633, ¶ 14 (12th Dist.). The next step of the analysis requires the court to determine if there is justifiable cause for the failure to support. *Id*.

{¶ 21} In approaching the issue of "justifiable cause," the Supreme Court of Ohio has declined to adopt a "precise and inflexible meaning" for this term, but instead has stated "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367 (1985); *see also In re Adoption of A.O.P.*, 2022-Ohio-2532, at ¶ 23 (12th Dist.) ("[t]he question of whether justifiable cause has been proven by clear and convincing evidence in a particular case is a determination for the probate court"). Other Ohio courts have defined "justifiable" as "capable of being legally or morally justified; excusable; defensible." *In re E.W.H.*, 2016-Ohio-7849, ¶ 33 (4th Dist.). Justifiable cause is determined by "weighing the evidence of the natural parent's circumstances." *In re Adoption of J.L.*, 2019-Ohio-366, ¶ 26 (1st Dist.).

{¶ 22} In this case, the probate court found there were several justifiable reasons for Mother's failure to provide support in the year preceding the adoption petition. In reaching this conclusion, the court considered many factors, including that Mother was

unemployed for part of the look-back period, and earned minimal wages otherwise; received an allowance from Grandfather; and had consistently relied upon her family to support her. The court noted that the Petitioners never asked Mother for support and that offers made by Mother to pay for food and other necessaries were repeatedly declined. The court also highlighted the parties' relative financial positions, the Petitioners' ability to provide for the child, their overall refusal to accept additional funds to pay for N.P.'s needs, and that Mother did not intentionally withhold funds or supplies from N.P. Thus, when considering the above, the court found the Petitioners had failed to prove that Mother had the ability to pay and was unwilling to do so.[8]

{¶ 23} On appeal, Maternal Grandmother argues the probate court's decision is against the manifest weight of the evidence because the court ignored evidence that Mother was employed for most of the relevant look-back period and that she was able to provide support to N.P. but was unwilling to do so. As explained below, we find Maternal Grandmother's arguments unpersuasive.

{¶ 24} As an initial note, Ohio case law suggests that a parent can establish justifiable cause for failing to provide the maintenance and support required by R.C. 3107.07(A) in many ways, all of which are determined on a case-by-case basis. *See In re Adoption of M.R.P.*, 2022-Ohio-1631, ¶ 20 (12th Dist.) ("[a]doption matters are decided on a case-by-case basis"). Courts have considered a wide range of factors in determining whether justifiable cause exists under R.C. 3107.07(A). These include the lack of the petitioner's need for financial assistance, whether child support was court ordered or requested by the petitioner, and the biological parent's inability to pay. *See, e.g., In re*

---

8. We note that, in her merit brief, Maternal Grandmother cites various "inaccurate facts" from the probate court's decision, including that the Petitioners are non-relatives and that "the mother participated in intensive inpatient and outpatient treatment programs" during the relevant look-back period. After review, the facts noted by Maternal Grandmother are not misstatements by the court, but were included as part of the court's summation of an analogous case, *In re A.O.P.*, 2022-Ohio-2532 (12th Dist.).

*Adoption of Hadley*, 1991 Ohio App. LEXIS 3783, *7 (2d Dist. May 6, 1991); *In re Adoption of S.L.P.*, 2020-Ohio-495, ¶ 32 (8th Dist.); *In re Adoption of LaValley*, 1999 Ohio App. LEXIS 3205, *12-13 (2d Dist. July 9, 1999); *In re E.W.H.*, 2016-Ohio-7849, ¶ 46 (4th Dist.). Both this court and the Ohio Supreme Court have recognized that a key factor in determining whether there is justifiable cause for a parent's failure to support her child is the parent's ability to pay. *In re Adoption of Masa*, 23 Ohio St. 3d, at 167; *In re Adoption of A.O.P.*, 2022-Ohio-2532, at ¶ 27 (12th Dist.).

**{¶ 25}** In this case, Mother testified that as of May 2022, she lived with her boyfriend's parents in Kentucky and was unable to work due to her lack of transportation. Thereafter, in August 2022, Mother and her boyfriend leased an apartment for $1,000 per month. Mother and her boyfriend split the rent, and any remaining earnings went toward Mother's additional bills like her cell phone and probation fees. After moving into the apartment, Mother obtained employment at a BP gas station where she worked 35 hours per week and earned $12.00 per hour.[9]

**{¶ 26}** Regarding her financial situation, Mother testified that between May 2022 and May 2023 she struggled financially. During this period, Mother was arrested twice and Grandfather paid her bail of approximately $1,000. Although she worked nearly full-time at BP, Mother testified she had little money remaining after paying her bills and probation fees. Despite this, Mother acknowledged she had some money to purchase containers of compressed air to support her substance abuse.[10]

---

9. In her merit brief, Maternal Grandmother references facts that occurred after the relevant look-back period, including that in June 2023, Mother moved in with Grandfather and began working for Grandfather around his home. At that time, Mother did not earn an hourly wage but was working to pay off debt owed to Grandfather and received an allowance for incidentals. This arrangement continued until September 2023, when Mother was temporarily employed at a Marathon gas station. Thereafter, in January 2024, Mother entered residential rehab for several months. Because these facts did not occur within the relevant look-back period, we will not discuss them in our analysis below.

10. Mother testified that she engages in "huffing," which involves the abuse of harmful intoxicants like compressed air.

{¶ 27} Mother's financial situation worsened in April 2023 when her boyfriend stole her savings and took their vehicle, which she had been paying for. Mother testified she was saving to purchase her own vehicle and that her savings were close to $200 at that time. After Mother's relationship ended, she messaged Maternal Grandmother asking for financial assistance. During her testimony, Maternal Grandmother stated she had provided Mother financial assistance during the look-back period on several occasions, including purchasing a white elephant gift in December 2022 that Maternal Grandmother knew Mother could not afford. According to Maternal Grandmother, she has a history of supporting Mother financially and that Mother has, since she was a teenager, asked Maternal Grandmother for financial assistance.

{¶ 28} Based upon Mother's employment at BP for nine months of the look-back period, and her pay of $12 per hour during that time, Maternal Grandmother argues Mother could have supported N.P. but chose not to do so. Maternal Grandmother notes that, despite having extra income to support N.P., Mother instead purchased N.P. nonessential gifts and luxuries for herself. For example, within the look-back period Mother purchased N.P. a costume dress, slippers, and a toy backpack, and purchased lobster and a steakhouse dinner for herself. According to Maternal Grandmother, Mother's decision to purchase these nonessential items, without otherwise supporting N.P., constitutes an "intentional decision" by Mother and demonstrates her "unwillingness" to support N.P.

{¶ 29} Notwithstanding Maternal Grandmother's argument, other courts have acknowledged that, even if a parent has the ability to support her child, a parent's failure to do so may be deemed justifiable if the child's needs are adequately provided for by the petitioner, who is in a better financial position than the parent, and the petitioner expressed no interest in receiving any financial assistance from the parent. *In re Adoption*

- 11 -

*of S.A.H*, 2007-Ohio-3710, ¶ 20-21 (4th Dist.); *In re Adoption of LaValley*, 1999 Ohio App. LEXIS 3205, at *12 (2nd Dist.); *In re Adoption of A.K.*, 2020-Ohio-3279, ¶ 23-24 (8th Dist.). As our sister court explained in *In re Adoption of LaValley*:

> [W]here . . . the parent has no reason to believe that his or her financial assistance is necessary for the support of the child, and the persons caring for the child have expressed no interest in receiving any financial assistance or contribution from the parent, no such abdication of parental responsibility is suggested by the natural parent's failure to provide financial assistance that is neither needed nor requested.

*In re Adoption of LaValley* at *12.

{¶ 30} In this case, the record supports that the Petitioners are in a better financial position than Mother and that Mother's financial assistance was not needed for the care of N.P. At the hearing, Maternal Grandmother testified that in 2023 her household income was approximately $110,000 and that she and her wife have lived in the same house for approximately 18 years. Although Maternal Grandmother testified she follows a strict budget, she also acknowledged the Petitioners have more than sufficient funds to provide for the care of N.P. Maternal Grandmother described at least two occasions where she had access to additional funds, but did not utilize them to care for N.P. This includes two child tax credit checks from 2021 and N.P.'s monthly social security benefits. Regarding the child tax credit checks, Maternal Grandmother testified that in 2021, the IRS sent Mother two checks. Maternal Grandmother declined Grandfather's offer to have Mother endorse the checks, which would have allowed Maternal Grandmother access to the funds, and instead kept the unendorsed checks in her possession. Regarding N.P.'s social security benefits, Maternal Grandmother testified that those funds were not used for N.P.'s daily care but were instead deposited into a savings account for N.P. and have been used to supplement the family's vacations to Disney World. Maternal Grandmother

testified she does not need the social security benefits to afford N.P.'s daily needs, but that she and her wife are financially able to provide for the child's wants and needs, including private school in the near future.

{¶ 31} There is also evidence in the record that the Petitioners did not request financial support from Mother or pursue a support order. While we agree with Maternal Grandmother that a request for support by a custodian is not a condition precedent to the duty to provide support for one's child, this court has recognized that a parent may establish justifiable cause for the failure to support her child if there is some indication that the parent made a conscious decision not to provide support based on facts which indicate that financial support was unnecessary. *In re Adoption of A.G.M.*, 2024-Ohio-2853, ¶ 31-33 (12th Dist.), citing *In re Adoption of J.M.N.*, 2008-Ohio-4394, ¶ 18 (2d Dist.).

{¶ 32} Here, there is ample evidence in the record demonstrating that Mother reasonably believed her financial support was unnecessary. As discussed above, the Petitioners had a combined annual income of $110,000, whereas Mother had financially struggled for much of her adult life. Mother attempted to provide what little assistance she could, but that assistance was repeatedly declined by Maternal Grandmother. Mother testified that on multiple occasions during the look-back period, she offered to provide meals and other necessities for N.P. but those offers were consistently denied.[11] Instead, Maternal Grandmother encouraged Mother to focus on her own stability and sobriety. Grandfather testified he made similar offers to assist in the care of N.P., but those offers were likewise refused because Maternal Grandmother "didn't need or want his money."

---

11. On one occasion, Mother testified the following: "When I visited, I have offered many times. And because I was denied, that is when I bought her things, because I kept getting denied. And I was told otherwise, to help yourself. Get help, pay your bills. I didn't know what else to do. That's why I kept buying her things." On another occasion, Mother testified that, "I always ask my mom if she needed anything. And she always responded . . . just get yourself better . . . just get yourself better. I don't need anyone's money. Get yourself better."

The record further reveals that Mother had no reason to believe her financial assistance was necessary for the child's care or well-being. As testified to by the Maternal Grandmother, the Petitioners are capable of adequately providing for the needs of N.P. While Mother's assistance could help with additional travel or purchasing a larger home, Maternal Grandmother explained that N.P. wants for nothing and lives a comfortable lifestyle with the Petitioners. There is similarly no evidence that Maternal Grandmother expected any financial assistance from Mother. Instead, the record indicates that Mother oftentimes asked for financial support from Maternal Grandmother and that Maternal Grandmother not only provided such support but repeatedly encouraged Mother to work on her money management and to focus on paying her bills.

{¶ 33} Based upon the above, we conclude there is competent and credible evidence in the record to establish that Mother's failure to support N.P. was a conscious decision based upon her belief that such support was unnecessary. Accordingly, because the record supports that Mother was willing but unable to provide support for her child, her failure to support N.P. was justified. *See In re Adoption of Alexander*, 1990 Ohio App. LEXIS 1358, *4-5 (12th Dist. Apr. 9, 1990).

{¶ 34} Lastly, we reject Maternal Grandmother 's argument that the probate court wrongfully substituted its judgment for that of the magistrate and discounted the weight the magistrate gave to Maternal Grandmother's testimony. Maternal Grandmother takes particular issue with the probate court's apparent disbelief of her testimony that neither Mother nor Grandfather offered any financial support for N.P. and that she did not decline any such offers. Civ.R. 53(E)(4)(b) provides that when a party files objections to a magistrate's decision, the court may adopt, reject, or modify the magistrate's decision; take additional evidence; return the matter to the magistrate, or hear the matter. A trial court has ultimate authority and responsibility over a magistrate's findings and rulings,

and can substitute its judgment for that of the magistrate's. *Naiman v. Naiman*, 2025-Ohio-1589, ¶ 36 (12th Dist.). However, when a probate court judge commits credibility determinations to a magistrate, the presumption that a subsequent credibility determination made by the probate court is correct is lessened. *Kubin v. Kubin*, 140 Ohio App. 3d 367, 371 (12th Dist. 2000). Regardless, the presumption that the probate court is correct in its judgment still exists. *Id*. "As the ultimate factfinder, the [probate] court judge decides whether the magistrate has properly determined the factual issues and appropriately applied the law, and where the magistrate has failed to do so, the [probate] court must substitute its judgment for that of the magistrate." *Patridge v. Matthews*, 2001-Ohio-4207, ¶ 5 (12th Dist.). Therefore, in this case, the probate court was not required to give deference and weight to the magistrate's ruling or its determination regarding Maternal Grandmother's credibility. After our review, we find no error in the weight given to Maternal Grandmother's testimony by the probate court. Instead, the probate court was free to believe all, part, or none of the testimony of each witness who appears before it. *In re Adoption of L.C.W.*, 2015-Ohio-61, ¶ 16 (12th Dist.).

### III. Conclusion

{¶ 35} Based on the foregoing analysis, and taking into consideration the totality of the circumstances, we hold that the probate court's decision that Mother demonstrated justifiable cause for failing to provide maintenance and support during the one year immediately prior to the filing of the adoption petition is supported by competent and credible evidence and is not against the weight of the evidence. This is simply not one of those exceptional cases in which the evidence weighs heavily against the probate court's decision to render it against the manifest weight of the evidence. *In re Adoption of A.O.P.*, 2022-Ohio-2532, at ¶ 28 (12th Dist.). As such, Mother's consent to the adoption of N.P. is required pursuant to R.C. 3707.07.

{¶ 36} Finding no merit to any of the arguments raised by Maternal Grandmother herein, Maternal Grandmother's assignment of error lacks merit and is overruled.

{¶ 37} Judgment affirmed.


 BYRNE, P.J., and PIPER, J., concur.

---

# JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


_/s/ Matthew R. Byrne, Presiding Judge_


_/s/ Robert A. Hendrickson, Judge_


_/s/ Robin N. Piper, Judge_